IN THE CASE OF

UNITED STATES, Appellee

v.

Ricky L. WALTERS, Airman Basic
U.S. Air Force, Appellant

No. 02-0874

Crim. App. No. 34575

United States Court of Appeals for the Armed Forces

Argued March 12, 2003

Decided July 01, 2003

ERDMANN, J., delivered the opinion of the Court, in which GIERKE, EFFRON, and BAKER, JJ., joined. CRAWFORD, C.J., filed a separate dissenting opinion.

Counsel

For Appellant:  Major Andrew S. Williams (argued); Colonel Beverly B. Knott, Major Terry L. McElyea, and Captain Jennifer K. Martwick (on brief).

For Appellee:  Lieutenant Colonel Michael E. Savage (argued); Lieutenant Colonel LeEllen Coacher and Lieutenant Colonel Lance B. Sigmon (on brief).

Military Judge:  James L. Flanary

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Judge ERDMANN delivered the opinion of the Court.

Appellant, Airman Basic Ricky Walters II, United States Air Force, was tried by general court-martial at Langley Air Force Base, Virginia. Contrary to his plea, he was convicted of wrongful use of "ecstasy," a Schedule I controlled substance, in violation of Article 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 912a (2000).

The adjudged and approved sentence consisted of a total forfeiture of all pay and allowances, confinement for thirty days and a bad-conduct discharge. On June 20, 2002, the Air Force Court of Criminal Appeals affirmed the findings and sentence. United States v. Walters, 57 M.J. 554 (A.F. Ct. Crim. App. 2002). On December 17, 2002, we granted Appellant's petition for review on the following issue:

> WHETHER THE AIR FORCE COURT ERRED IN AFFIRMING APPELLANT'S CONVICTION FOR WRONGFULLY USING ECSTASY WHERE THE FINDINGS OF THE COURT-MARTIAL WERE VAGUE AND AMBIGUOUS AND FAILED TO REFLECT WHAT FACTS CONSTITUTED THE OFFENSE.

We hold that the military judge erred by failing to properly instruct the members of the court-martial and by failing to obtain clarification of the findings prior to announcement. We further hold that the resulting ambiguity in the findings precluded a review by the Court of Criminal Appeals under Article 66, UCMJ, 10 U.S.C. § 866 (2000).

BACKGROUND

Appellant was tried by general court-martial for one specification of wrongfully using and one specification of wrongfully distributing ecstasy in violation of Article 112a. A panel of officer and enlisted members found him not guilty of the

2

wrongful distribution specification; accordingly, that specification is not at issue in this appeal.

The wrongful use specification alleged use "on divers occasions between on or about 1 April 2000 and on or about 18 July 2000." The Government offered proof at trial of a number of instances of alleged use of ecstasy during the time period in the specification:

(1) Senior Airman (SrA) Russ, a friend of Appellant's who testified throughout the trial under a grant of immunity, spoke about an occasion in middle to late June 2000 when Appellant told him that he had used ecstasy. Senior Airman Russ testified that at the time Appellant's eyes were glassy, his pupils looked dilated and he was twitching and making strange gestures.

(2) A friend of Appellant, Airman First Class (A1C) Humble, testified about an occasion at some point between March 3, 2000 and July 31, 2000 where Appellant made a statement that he was planning on using ecstasy.

(3) An undercover special agent for the Air Force Office of Special Investigations testified that on June 23, 2000 Appellant told her that he had taken a pill of ecstasy "an hour or two ago." She testified that he was perspiring, his speech was slurred and his skin was sensitive to the touch.

(4) Airman First Class Humble testified that sometime between March and July 2000[1] Appellant was in Humble's dorm room with his (Appellant's) girlfriend.  Airman First Class Humble testified that Appellant said it was his first time using ecstasy and he wanted his girlfriend to try it with him.  Airman First Class Humble also testified that he observed Appellant pull a piece of plastic out of his pocket that appeared to contain a couple of small pills and that Appellant appeared to hand something to his girlfriend.

(5) Senior Airman Russ testified that he was in A1C Humble's dorm room at some point around July 4, 2000 when they were joined by Appellant and his girlfriend.[2] Senior Airman Russ indicated that he observed Appellant taking what appeared to be small pills out of his pocket in a plastic wrapper, at which point A1C Humble and Appellant had a "little argument" and Appellant left with his girlfriend, returning thirty to forty-five minutes later.

(6) Senior Airman Russ also testified that Appellant came into his [SrA Russ'] room in July of 2000 with two pills wrapped in cellophane.  Senior Airman Russ testified that Appellant asked him if he wanted to crush one of them, which SrA Russ did.  Senior Airman Russ testified that Appellant swallowed one of the pills and used a dollar bill to "snort" the crushed pill.  In addition to observing a mood change on Appellant's part, SrA Russ

---

[1] Airman First Class Humble testified on direct that this occurred between March and May 2000. He testified on cross-examination that it occurred sometime between April and July.

[2] The record is unclear as to whether the Government intended A1C Humble's and SrA Russ' testimony to prove the same incident in A1C Humble's dorm room. Airman First Class Humble testified that SrA Russ was not in the room when he observed Appellant's actions. Neither the Government's opening nor closing arguments clarify this discrepancy.

testified that he applied Vick's VapoRub to Appellant's face and observed Appellant smoking menthol cigarettes, both alleged to enhance an ecstasy high.

At the conclusion of testimony, the military judge gave his pre-argument instructions, which included a "variance" instruction:

> If you have a doubt about the time or place in which the charged misconduct occurred, but you are satisfied beyond a reasonable doubt that the offense was committed at a time, at a place, or in a particular manner which differs slightly from the exact time, place or manner in the specification, you may make minor modifications in reaching your findings by changing the time, place, or manner in which the alleged misconduct described in the specification occurred, provided that you do not change the nature or identity of [the] offense.  Mr. President, in relation to that, sir, we will be giving you what's called a Findings Worksheet later on and there's a section for what is called findings by exceptions and substitutions and that goes toward this particular instruction and when I pass that to you, I think you'll be able to see exactly what it means on that[.]

After closing arguments, the military judge provided the members with the findings worksheet and gave them instructions regarding its use.  The worksheet provided an option (I) for "Full Acquittal or Full Conviction" and an option (II) for "Mixed Findings."  The "mixed findings" portion relating to the wrongful use charge and specification read as follows:

A. Of Specification 1 of the Charge: (Not Guilty) (Guilty)

or

> Of Specification 1 of the Charge: (Not Guilty) (Guilty) (Guilty, Except the [words][figures][words and figures]
>
> Substituting there for the [words][figures][words and figures]:
> _____
>
> Of the excepted [words][figures][words and figures]: Not Guilty

       Of the [substituted][remaining][words][figures][words and figures] Guilty

While the military judge was instructing the members on how to complete the findings worksheet, he stated:

> Mr. President, in reference to that particular worksheet, if you'll look at the top part where it says complete acquittal or complete findings of guilt, if, on the votes, you should find the accused guilty of the specifications as charged for both specifications, then you would use that particular portion of the worksheet.  If, however -- or, if you found him not guilty, also, you would use that portion for both specifications.  If you should have what's called a mixed findings, which is either you may find guilt of one specification but not guilty of another, or, if you do what is called findings by exceptions and substitutions, which is the variance instruction I have given you earlier, where you may – and this is just an example – on the divers uses, you may find just one use, and you except out the words divers uses and you substitute in the word one time, or something like that, then you would use the second part.  Sir, I say that only as an example.  That does not reflect in any way, any opinion of the court for these particular specifications and charges.  Having looked over that, do you have any questions concerning the findings worksheet?

The president of the panel answered "No, sir" and neither party requested any further instructions on how to use the "mixed findings" portion of the worksheet.

When the members returned from deliberations, the president indicated that they wanted to make sure they had filled out the worksheet correctly. They handed the worksheet to the military judge, at which point the relevant portion appeared as follows:

    A. ~~Of Specification 1 of the Charge: (Not Guilty) (Guilty)~~

               ~~or~~

    Of Specification 1 of the Charge: ~~(Not Guilty)~~ (Guilty) (Guilty, Except the [words]~~[figures][words and figures]~~: <u>diverse [sic] occasions</u>[3]

    Substituting there for the [words][~~figures][words and figures]~~: <u>one occasion</u>

_____

[3] Underlined portions signify handwritten text.

> Of the excepted [words][~~figures~~][~~words and figures~~]: diverse [sic] occasions
> Not Guilty
>
> Of the [substituted][~~remaining~~][words][~~figures~~][~~words and figures~~] one occasion
> Guilty

After reviewing the worksheet, the military judge placed an asterisk by the term "(Guilty)" following the stricken term "(Not Guilty)" in the first sentence of the alternative finding and advised the president that the term needed to be marked out as well.  Apart from a reminder as to a sentence on the second page of the worksheet, that was the only instruction or clarification given by the military judge.  The findings were then announced as follows:

FINDINGS

PRES:     (LtCol Anderson) Airman Basic Ricky L. Walters II, this court-martial finds you:
          Of Specification 1 of the Charge: Guilty except the words divers occasions; substituting therefor the words one occasion.  Of the excepted words divers occasions: Not guilty.  Of the substituted words one occasion: Guilty.
          Of Specification 2 of the Charge: Not guilty.

MJ:       And then, sir, the second page, the very last thing.

FINDINGS (CONTINUED)

PRES:     (LtCol Anderson) Of Charge I: Guilty.

DISCUSSION

The granted issue centers on Appellant's contention that the findings were "vague and ambiguous and failed to reflect what facts constituted the offense."  The lower court addressed the alleged "ambiguity" by applying the "common law" rule on general jury verdicts:

7

> [i]t was settled law in England before the Declaration of Independence, and in this country long afterwards, that a general jury verdict was valid so long as it was legally supportable on one of the submitted grounds even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's actions.

Walters, 57 M.J. at 556 (quoting Griffin v. United States, 502 U.S. 46, 49 (1991)).

In addition to relying on Griffin and other Supreme Court authority, the Air Force court also relied on our decision in United States v. Vidal, 23 M.J. 319 (C.M.A. 1987), cert. denied, 481 U.S. 1052 (1987).  In Vidal, the accused was charged and convicted under a single specification of rape, but proof was offered as to his guilt both as the perpetrator and on a theory of aiding and abetting (i.e., holding the victim down).  23 M.J. at 324-25.  In rejecting Vidal's claim that the Government was required to elect between the two alternatives, we noted that "[t]he only condition is that there be evidence sufficient to justify a finding of guilty on any theory of liability submitted to the members."  Id. at 325.

The Air Force court ultimately concluded that it "must apply the common-law rule, as set out by the Supreme Court and our superior court in Vidal" and affirmed the findings and sentence. Walters at 558-59.  In reaching that result, the court overruled its prior decision in United States v. King, 50 M.J. 686 (A.F. Ct. Crim. App. 1999)(en banc).  The issues presented in King were similar to the issues raised in this case: the appellant was charged under a specification alleging a wrongful act "on divers occasions"; the government presented proof at trial of more than one instance of the wrongful act; the members found the accused

guilty of the wrongful act, but not guilty of the words "on divers occasions."  Id. at 687.

The King court concluded that it could not determine what conduct the accused had been found guilty of and what conduct he had been acquitted of.  Consequently, the court found that an ambiguous verdict of this type precluded any proper exercise of its appellate review authority under Article 66(c).  Id. at 688. We conclude that the Air Force court was correct in its analysis in King and was in error when it relied on "the common-law rule regarding general verdicts" in the present case.

The Courts of Criminal Appeals' appellate review authority flows from Article 66(c), not the common law.  While there are instances in military law where common law principles are applicable, the "center of gravity" for the Courts of Criminal Appeals is their statutory review function under Article 66(c):

> In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority.  It may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.  In considering the record, it may weigh the evidence, judge the credibility of issues, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

The resolution of the legal issues presented in both King and the present case hinge on that unique statutory function.  As we have noted in the past, Article 66(c) affords the Courts of Criminal Appeals an "awesome, plenary, de novo power."  United States v. Quiroz, 55 M.J. 334, 338 (C.A.A.F. 2001)(quoting United States v. Cole, 31 M.J. 270, 272 (C.M.A. 1990)).  It requires them to conduct a de novo review of both the legal and factual

sufficiency of a conviction.  United States v. Washington, 57 M.J. 394, 399 (C.A.A.F. 2002)(emphasis added); see also United States v. Turner, 25 M.J. 324, 325 (C.M.A. 1987).

The test for legal sufficiency is a familiar standard in both military and civilian jurisdictions and is whether, considering the evidence in a light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt.  Turner, 25 M.J. at 324 (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  In terms of factual sufficiency, however, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the service court are themselves convinced of appellant's guilt beyond a reasonable doubt.  Turner, 25 M.J. at 325 (emphasis added).  As a general rule, civilian appellate courts do not possess the authority to conduct this type of factual sufficiency review.[4]

This unique power of review for factual sufficiency, however, is subject to a critical limitation.  A Court of Criminal Appeals cannot find as fact any allegation in a specification for which the fact-finder below has found the accused not guilty.  United States v. Smith, 39 M.J. 448, 451 (C.M.A. 1994); see also United States v. Nedeau, 7 C.M.A. 718, 721, 23 C.M.R. 185, 188 (1957).

---

[4]  Those few civilian courts that conduct a review for factual sufficiency do so under different standards.  For example, although the Texas Courts of Appeal and Court of Criminal Appeals conduct a review styled as "factual sufficiency," it is not framed in terms of an affirmative requirement that the members of the appellate body be themselves convinced of appellant's guilt beyond a reasonable doubt.  See e.g., Sells v. State, 2003 Tex. Crim. App. LEXIS 63, at *4-*8 (Tex. Crim. App. Mar. 12, 2003).

As the Air Force court properly recognized in King, it is that limitation on its statutory authority that precludes any proper appellate review of this type of ambiguous verdict. Appellant was found guilty of using ecstasy on one occasion during the time period referenced in the specification. The Government attempted to prove allegations of wrongful use on numerous occasions and the verdict reflected that the members found Appellant not guilty of all of those allegations save one.

By virtue of the limitation recognized in Smith, in conducting its factual sufficiency review the Court of Criminal Appeals cannot find the Appellant guilty of any of the allegations of use of which the members found him not guilty. The Court of Criminal Appeals is required to weigh the evidence and be themselves convinced beyond a reasonable doubt of Appellant's guilt of engaging in wrongful use on the same "one occasion" that served as the basis for the members' guilty finding. Without knowing which incident that Appellant had been found guilty of and which incidents he was found not guilty of, that task is impossible.

The lower court's discussion of "the common-law rule regarding general verdicts," while certainly a correct statement of that area of the law, is simply not applicable to this situation. None of the "common law" authority relied upon by the lower court involve an appellate review that simultaneously requires an independent determination of guilt beyond a reasonable doubt and which prohibits a finding of guilty for conduct for which the Appellant was acquitted at the trial level.

Further, the essence of the cases relied upon by the Air Force Court lies in the effect of uncertainty over what specific conduct may have served as the basis for a jury's general verdict of guilty. See e.g., Griffin v. United States, 502 U.S. 46 (1991); United States v. Turner, 396 U.S. 398 (1970); Vidal, 23 M.J. at 324-25. This case, on the other hand, centers on the legal effect of uncertainty over what specific conduct may have served as the basis for a jury's verdict of not guilty.

The ambiguous verdict here can be traced to the military judge's error in both his hypothetical instruction to the members regarding a finding by exceptions and substitutions and his failure to secure clarification of the ambiguity when he reviewed the findings worksheet prior to announcement. While his hypothetical example of a finding by exceptions and substitutions was well intended, it was less than complete.

Where a specification alleges wrongful acts on "divers occasions," the members must be instructed that any findings by exceptions and substitutions that remove the "divers occasions" language must clearly reflect the specific instance of conduct upon which their modified findings are based. That can generally be accomplished through reference in the substituted language to a relevant date or other facts in evidence that will clearly put the accused and the reviewing courts on notice of what conduct served as the basis for the findings.

The military judge's instructions did not address that requirement. That error was compounded when the military judge failed to secure clarification of the ambiguity when he reviewed

the findings prior to announcement under Rule for Courts-Martial 921(d).[5]

This case presents a narrow circumstance involving the conversion of a "divers occasions" specification to a "one occasion" specification through exceptions and substitutions. When a specification alleging instances of misconduct on divers occasions is involved, findings by exceptions and substitutions eliminating all but one instance are a distinct possibility. Both trial practitioners and military judges need to be aware of the potential for ambiguous findings in such cases and take appropriate steps through instruction and pre-announcement review of findings to ensure that no ambiguity occurs. Id.

In sum, the military judge erred in giving incomplete instructions regarding the use of findings by exceptions and substitutions and in failing to secure clarification of the court-martial's ambiguous findings prior to announcement. The Court of Criminal Appeals, in turn, could not conduct a factual sufficiency review of Appellant's conviction because the findings of guilty and not guilty do not disclose the conduct upon which each of them was based. Appellant has a substantial right to a full and fair review of his conviction under Article 66(c) and the ambiguity in the court-martial's findings results in material

---

[5] While Rule for Courts-Martial 922 discussion indicates that the military judge can seek clarification of ambiguous findings after announcement, this type of verdict involves a dual finding of guilty and not guilty. Once announced, the latter aspect of the verdict clearly becomes final and cannot be reconsidered. See United States v. Boswell, 8 C.M.A. 145, 149, 23 C.M.R. 373, 377 (1957); R.C.M. 924(a). In order to avoid any uncertainty as to when post-announcement "clarification" under R.C.M. 922 crosses the line into prohibited "reconsideration" under R.C.M. 924, ambiguities in this type of verdict should be resolved prior to announcement.

prejudice to that right. See Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2000).

Finally, the same unique character of the verdict that precludes any factual sufficiency review also precludes any rehearing in this matter. As conceded by the Government at argument, the findings reflect Appellant's acquittal of all but one of the alleged instances of ecstasy use and any rehearing on those instances is clearly barred by double jeopardy principles. As such, the inability to identify and segregate those instances of alleged use of which Appellant was acquitted from the "one occasion" that served as the basis for the guilty finding effectively prevents any rehearing.

## CONCLUSION

Accordingly, the decision of the Air Force Court of Criminal Appeals is reversed. The finding of guilty of Charge I, Specification 1 and the sentence are set aside. The Charge and Specification are dismissed.

United States v. Walters, No. 02-0874/AF

CRAWFORD, Chief Judge (dissenting):

Appellant waived double jeopardy by appealing his conviction, and thereby allowing the Government to begin its case anew. Moreover, Appellant waived the issues of duplicity and ambiguity by failing to object to duplicitous pleadings, the judge's misleading instruction to the members, and the ambiguous verdict. This Court should not reward Appellant on grounds he deliberately chose to ignore, and therefore waived. This Court should return the case for rehearing to determine the specific occasion on which Appellant used drugs.

The double jeopardy clause has a threefold purpose: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969). Certainly, the policy of avoiding multiple trials is of paramount importance in the judicial system.

Nevertheless, the Supreme Court has granted exceptions to the one-trial rule, acknowledging that the defendant waives his double jeopardy claim by appealing his conviction. United States v. Wilson, 420 U.S. 332, 344 n.11 (1975); Green v. United States, 355 U.S. 184, 189 (1957). To be sure, this principle promotes the sound administration of justice.

> It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.  From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution.  In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest.

United States v. Tateo, 377 U.S. 463, 466 (1964).  This exception applies to this case.  Appellant waived his right to a double jeopardy claim by appealing his conviction, and cannot now avoid a rehearing on double jeopardy grounds.  See Sattazahn v. Pennsylvania, 537 U.S. 101 (2003)(finding that where a defendant is convicted of murder and sentenced to life imprisonment, but appeals the conviction and succeeds in having it set aside, double jeopardy does not bar death sentence on retrial).

Moreover, notwithstanding the judge's error, defense counsel was obligated to be vigilant of potential error at trial, and to object to such error so that it may be corrected immediately.  Rule for Courts-Martial 905(e)[hereinafter R.C.M.] establishes that "[m]otions, requests, defenses, or objections, except lack of jurisdiction or failure of a charge to allege an offense, must be raised before the court-martial is adjourned for that case and, unless otherwise provided in [the Manual for

2

Courts-Martial, United States (2002 ed.)], failure to do so shall constitute waiver." (Emphasis added.) The waiver doctrine aims "to prevent defense counsel from remaining silent, making no objection, and then raising the issue on appeal for the first time, long after any possibility of curing the problem has vanished." United States v. Causey, 37 M.J. 308, 311 (C.M.A. 1993). Certainly, "[i]f an individual is permitted not to object and then can raise the issue on appeal, both the parties and the public are put to the expense of retrial." United States v. Jones, 37 M.J. 321, 323 (C.M.A. 1993).

R.C.M. 307(c)(4) requires that "[e]ach specification shall state only one offense." When a specification states more than one offense, it is improperly duplicitous. See R.C.M. 906(b)(5) and discussion. Yet, upon learning of his duplicitous charge of drug use on "divers occasions," Appellant failed to move for a bill of particulars or to limit duplicitous pleadings. See United States v. Paulk, 13 C.M.A. 456, 458, 32 C.M.R. 456, 458 (1963)(noting the need for particularization when pleadings are duplicitous). He likely did so rather than running the risk of the severance into several distinct specifications that could have yielded an increased sentence. Moreover, a verdict must be certain, definite, and free from ambiguity. United States v. Dilday, 47 C.M.R. 172, 173 (A.C.M.R. 1973). Yet, upon hearing the judge's misleading instruction to the members, and the

resulting ambiguous verdict of drug use on "one occasion," Appellant failed to object.  In short, because Appellant chose to remain silent and exploit the benefits of the duplicitous pleadings, misleading instruction, and ambiguous verdict, he waived the issue on appeal.

It is significant that this Court has applied waiver when defense counsel has failed at trial to raise the issue of an unreasonable multiplication of charges.  See United States v. Butcher, 56 M.J. 87, 93 (C.A.A.F. 2001).  In a multiplicity context, there is strong incentive for defense counsel to object, and therefore for the error to be resolved expeditiously, as the accused may be subject to a greater punishment were the multiplicitous charge to stand.  On the contrary, in a duplicity context, defense counsel may be motivated not to object, as it is the duplicitous charge -- not the amended, severed charge -- that would afford the accused a more favorable sentence.  If this Court will apply waiver in a multiplicity context, it clearly should do so in a duplicity context, where there is an even greater risk that the error will survive the trial without resolution.  In short, because Appellant appealed his conviction, he cannot now avoid a rehearing on double jeopardy grounds.  Moreover, Appellant's deliberate silence at trial in the face of duplicitous pleadings, the judge's erroneous instruction, and an ambiguous

verdict waived his opportunity to obtain relief on those grounds.  Accordingly, this Court should remand the case for rehearing to determine on which occasion Appellant did use drugs.

For these reasons, I respectfully dissent from the lead opinion.