# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, GALLAGHER, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist EDWARD J. SMITH**
**United States Army, Appellant**

ARMY 20110418

Headquarters, 3rd Infantry Division and Fort Stewart
Tiernan P. Dolan, Military Judge
Colonel Jonathan C. Guden, Staff Judge Advocate (pretrial)
Colonel Randall J. Bagwell, Staff Judge Advocate (post-trial)

For Appellant: Lieutenant Colonel Imogene M. Jamison, JA; Major Richard E. Gorini, JA; Captain Matthew R. Laird, JA (on specified issue); Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Richard E. Gorini, JA; Major Meghan M. Poirer, JA (on original brief).

For Appellee: Lieutenant Colonel Amber J. Roach, JA; Major Daniel D. Maurer, JA; Captain T. Campbell Warner, JA (on specified issue); Lieutenant Colonel Amber J. Roach, JA; Major Katherine S. Gowel, JA; Captain T. Campbell Warner, JA (on brief).

30 July 2013

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

COOK, Senior Judge:

A panel composed of officers and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of rape by force, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920

SMITH—ARMY 20110418

(2006) [hereinafter UCMJ].[1] The panel sentenced appellant to a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for ten years, and reduction to the grade of E-1.

This case is before us for review under Article 66, UCMJ. Appellate defense counsel raised two assignments of error to this court[2] and appellant personally raised matters to this court pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Neither the assignments of error nor the matters personally raised by appellant merit discussion or relief.

On 29 March 2013 this court specified the following additional issue:

> DID THE PANEL RECEIVE SUFFICIENT
> INSTRUCTIONS SO THAT THEY WERE ABLE TO
> DISTINGUISH WHICH DISTINCT RAPE
> ALLEGATIONS WERE ASSOCIATED WITH
> SPECIFICATIONS 1 AND 2 OF REDESIGNATED

---

[1] The panel acquitted appellant of willfully disobeying his superior commissioned officer, aggravated sexual assault, and assault consummated by a battery in violation of Articles 90, 120, and 128, UCMJ, 10 U.S.C. §§ 890, 920, 928 (2006).

[2] Appellant raised the following assignments of error to this court:

I.

> THE MILITARY JUDGE ABUSED HIS DISCRETION
> WHEN HE DENIED THE DEFENSE REQUEST FOR AN
> EXPERT CONSULTANT IN THE FIELD OF
> PSYCHOLOGY AND FALSE CONFESSIONS BASED
> ON DEFENSE COUNSEL'S ABILITY TO ARGUE
> TRADITIONAL VOLUNTARINESS FACTORS SUCH AS
> FATIGUE AND HUNGER.

II.

> THE RECORD OF TRIAL FAILS TO SHOW THAT
> APPELLANT MADE A PERSONAL ELECTION OF
> FORUM IN THIS CASE, CREATING A
> JURISDICTIONAL ERROR REQUIRING REVERSAL.

2

CHARGE I, RESPECTIVELY?  IF NOT, WAS THE
APPELLANT MATERIALLY PREJUDICED AS A
RESULT OF THE INSTRUCTIONS GIVEN BY THE
MILITARY JUDGE ON THIS MATTER?

Having now received briefs from appellant and government counsel, this specified issue warrants further discussion, but ultimately no relief.

## BACKGROUND

The underlying facts supporting appellant's rape convictions were primarily established by appellant's own pretrial statement, entered into evidence as Prosecution Exhibit (Pros. Ex.) 2, and CS's (the victim) testimony at trial.  On 28 September 2010, a friend told appellant that he had just seen appellant's wife, CS, hugging another man at a local gas station.  Later that evening, appellant and his friend confronted CS.  CS testified she told appellant she had not hugged another man that day.  To the contrary, in his statement, appellant alleged CS did not dispute that she had been hugging another man.  Regardless of the truth surrounding the alleged hugging incident, it served as a trigger for appellant's rape of his wife.

Pursuant to appellant's statement, on the night of 28 September 2010, "he wanted to have sex with [CS] because I wanted to see if she had a loose [vagina] from just having sex with that man."  According to his statement, and as corroborated by CS at trial, on the night of 28 September 2010 at around 2100, appellant raped CS by using force.  Specifically, although CS had rebuffed appellant's request to have sex, he pushed her onto the bed, got on top of her and held her down by both arms while engaging in sexual intercourse.  When appellant placed his penis inside his wife's vagina, CS "was yelling and crying for [appellant] to stop and she was telling [appellant] no."  CS struggled against her husband, but appellant continued to rape her for twenty to thirty minutes and only stopped after he ejaculated.

CS then got off the bed and left the room to attend to the couple's son.  She next went to the bathroom and then returned to bed.  Appellant, while lying in bed, told CS he wanted to engage in additional sexual intercourse.  CS informed appellant her vagina was sore and that she was not interested in sexual intercourse.  Appellant, despite the protestations, raped his wife again by using force, once again by holding her down as she struggled, in a fashion similar to the first rape.  Appellant continued to rape CS for twenty to thirty minutes and only stopped, once again, after he ejaculated.

Two convictions for two separate rapes are supported based on a review of the record.  The issue this court specified was aimed at the government's decision to charge appellant with identical language and then prosecute those two separate

instances without identifying which instance correlated with a particular specification. Specifically, the first two specifications of re-numbered Charge I [hereinafter Charge I] state:

> SPECIFICATION 1: In that [appellant], U.S. Army, did, at or near Fort Stewart, Georgia, on or about 28 September 2010, cause [CS] to engage in a sexual act, to wit: sexual intercourse by penetrating her vulva with his penis, by using strength and power sufficient that she could not avoid or escape the sexual act.

> SPECIFICATION 2: In that [appellant], U.S. Army, did, at or near Fort Stewart, Georgia, on or about 28 September 2010, cause [CS] to engage in a sexual act, to wit: sexual intercourse by penetrating her vulva with his penis, by using strength and power sufficient that she could not avoid or escape the sexual act.

Until this court raised the issue, at no juncture, to include pretrial, trial, and post-trial stages, had appellant or his counsel expressed any confusion over the government's charging decision concerning these two specifications. Defense counsel did not request a bill of particulars to clarify what specification was linked to which rape allegation. Likewise, defense counsel never filed a motion challenging these two identical specifications based on multiplicity. To the contrary, defense counsel, in a pretrial motion, (Appellate Exhibit VIII), argued it was impermissible for the government to charge appellant with three specifications alleging sexual assault on 28 September 2010 when it appeared "that no more than two assaults" had occurred on 28 September 2010. This motion did not challenge the two rape specifications, but rather the third specification, which contained an alternative theory that charged appellant with an aggravated sexual assault of CS by causing her to have sexual intercourse with appellant on 28 September 2010 by threatening not to pay the bills and thereby harming the family.

Trial counsel, in his opening statement, made it clear that appellant had twice raped his wife on 28 September 2010 stating, "[a]nd so the relationship continued and so did the abuse. It culminated on the 28th of September 2010 when the accused raped [CS] twice on the same night in their residence at Fort Stewart . . . ." As captured above, both CS's trial testimony and appellant's pretrial statement supported two separate rapes, using the same type of force, using the same victim, on the same day, and in the same location. At no time during trial did defense counsel object to these two specifications and neither defense counsel nor government counsel requested a specific instruction be given to the panel in order to clarify what specification was linked to a particular rape allegation. The military judge did not *sua sponte* give an instruction to the panel clarifying which

4

specification of Charge I was associated with which rape allegation. Despite all of the above, there is no evidence in the record, however, that reflects the panel was confused regarding what conduct was covered by each specification.

Appellant's defense counsel did not raise an issue about these specifications in matters submitted pursuant to Rules for Courts-Martial [hereinafter R.C.M.] 1105 and 1106. Neither appellate defense counsel nor appellant assigned this issue as error before this court.

## LAW AND DISCUSSION

As a preliminary matter, as both parties identify in their briefs to this court, if the appellant had been found not guilty of either Specification 1 or 2 of Charge I, we would be faced with an issue similar to that found in *United States v. Walters*, 58 M.J. 391 (C.A.A.F. 2003). Specifically, because the specifications are identical and no overt distinction was made as to which specification was associated with a particular rape, we would have had to assess the record to determine whether it was possible to discern of which rape appellant had been found guilty and of which rape appellant had been acquitted. As such, we would be remiss if we did not echo the language used in *Walters* that "[b]oth trial practitioners and military judges need to be aware of the potential for ambiguous findings" and "take appropriate steps through instruction and pre-announcement review of findings to ensure that no ambiguity occurs." 58 M.J. at 396.

While we caution military judges to formulate instructions in a manner to avoid any ambiguity, we are ultimately able to distinguish this case from *Walters* and affirm the convictions. Here, appellant was convicted, not acquitted, of identical rape specifications. In answering the first question we posed to appellate counsel, we find the military judge did not clarify for the panel or this court which rape allegation was associated with a particular specification. However, we find this does not amount to error and did not materially prejudice appellant.

In reviewing the military judge's instructions, we note that except for mandatory instructions, a military judge's decision whether to give an instruction is reviewed for an abuse of discretion. *United States v. Brown*, 50 M.J. 262, 266 (1999); *United States v. Poole*, 47 M.J. 17, 18-19 (1997). In addition, a military judge is afforded "considerable discretion" in tailoring instructions to the evidence and law. *United States v. Hopkins*, 56 M.J. 393, 395 (2002). Here, in reviewing the instructions the military judge gave in regards to Specifications 1 and 2 of Charge I, we ultimately find they were proper. He first covered the requisite elements of the charged rape by force for the first specification and then defined relevant terms such as "sexual act" and "force." He then further instructed the panel concerning the lesser-included offense (LIO) of aggravated sexual assault.

5

Next, the military judge covered the requisite elements of the charged rape by force for the second specification. He also stated the same definitions he had used to describe "sexual act" and "force" should be applied to this charged offense and no members wished to have those definitions repeated. The military judge again instructed the panel concerning the LIO of aggravated sexual assault that applied to this charge.

After instructing the panel in regards to Specification 3 of Charge I, the military judge explained to the panel that the evidence had raised the defense of consent as to Specifications 1 and 2 of Charge I, the LIO associated with those specifications and also Specification 3, Charge I. The military judge then provided a definition of consent to the panel. The military judge further explained to the panel the evidence had raised the defense of mistake of fact as to consent in regards to Specifications 1 and 2 of Charge I, their LIOs, and Specification 3 of Charge I. Both parties agreed to these instructions. There is no evidence in the record that the panel was confused by these instructions. Therefore, we ultimately conclude that these circumstances could lead to an ambiguous finding, but here they did not.

In reviewing these identical specifications, we have also determined that these specifications are not multiplicious and did not subject appellant to double jeopardy. Multiplicity "not only prohibits successive trials for the same offense, it also prohibits separate convictions for the same offense at the same trial." *United States vs. Whitehorn*, 2002 WL 341580 (A.F. Ct. Crim. App. 5 Feb. 2002) (citing *United States vs. Ball*, 470 U.S. 856 (1985); *United States vs. Britton*, 47 M.J. 195 (1997)). As explained above, Specifications 1 and 2 of Charge I, although identical, were treated as covering separate rapes and not identical conduct. Appellant, on the same date, at the same place, and using the same type of force, twice raped CS. His actions were not charged, treated, or challenged as one continuous act of forced sexual intercourse. The conclusion that both parties clearly understood that identical specifications covered separate rapes is reflected by defense counsel neither seeking a bill of particulars nor filing a motion alleging these two specifications were multiplicious.

Pursuant to our statutory review authority under Article 66(c), UCMJ, we may affirm:

> only such findings of guilty and the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved. In considering the record, [we] may weigh the evidence, judge the credibility of issues, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

UCMJ art. 66(c).

The evidence in this case supports affirming two separate convictions for rape.

## CONCLUSION

On consideration of the entire record, the submissions of the parties, and those matters personally raised by appellant pursuant to *Grostefon*, we hold the findings of guilty and the sentence as approved by the convening authority are correct in law and fact.

Accordingly, the findings of guilty and the sentence are AFFIRMED.

Judge GALLAGHER and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court