# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class DAYLON R. SANDERS**
**United States Army, Appellant**

ARMY 20160184

Headquarters, 8th Theater Sustainment Command
Mark Bridges, Military Judge
Colonel Anthony T. Febbo, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany M. Chapman, JA; Major Julie L. Borchers, JA; Captain Augustus Turner, JA (on brief).

For Appellee: Colonel Tania M. Martin, JA; Captain Austin L. Fenwick, JA; Captain Joshua B. Banister, JA (on brief).

26 July 2018

---------------------------------
SUMMARY DISPOSITION
---------------------------------

BURTON, Senior Judge:

Appellant asserts his conviction for sexual assaulting Private First Class (PFC) HM is factually insufficient. We agree, set aside the findings and dismiss the charge.[1]

This case is before this court pursuant to Article 66(c), Uniform Code of Military Justice [UCMJ]. A panel of officer and enlisted members sitting as a general court-martial convicted appellant of two specifications of sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 120 (2012). After findings, the military judge dismissed one specification after merging it with the other specification of The Charge. The convening authority approved the sentence adjudged by the panel of a dishonorable discharge and confinement for six months.

---

[1] Our resolution of the factual sufficiency issue moots the remaining assigned errors, as well as those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

**BACKGROUND**

On or about 3 January 2015, appellant, PFC HM, and several other soldiers gathered for a party in the barracks at Schofield Barracks, Hawaii. The party began in the barracks suite shared by Specialist (SPC) KP and PFC HM and eventually moved to the second floor suite occupied by PFC MF.

At some point during the party PFC HM and appellant danced in the kitchen. At least one witness saw PFC HM grinding her buttocks against appellant and appellant touching PFC HM's breasts. As the party progressed, PFC HM got intoxicated to the point where she was crawling on the ground and having difficulty speaking in full sentences. This prompted PFC LC and SPC CR to carry PFC HM downstairs to her room and put her to bed. Private First Class LC and SPC CR then returned to the party. Sometime later, PFC HM left her room, crawled back to the party on the second floor and tried to lay down on a couch. Again, PFC LC and SPC CR carried PFC HM back to her room and put her to bed. At the time, appellant was in PFC HM's bed and appeared to be passed out or asleep. Private First Class LC and SPC CR returned to the party.

At some later point, somebody came upstairs and told PFC LC that PFC HM's door was closed and locked. Specialist KP and PFC LC reported this event four months later to a SHARP representative and the U.S. Army Criminal Investigation Command (CID). At trial, the witness accounts of what happened next diverged. The following three witnesses provided the most detail: (1) PFC LC; (2) SPC KP; and (3) SPC DC.

Private First Class LC testified that she grabbed a butter knife and used it to open PFC HM's bedroom door. Private First Class LC could see in the room as the lights were on. She witnessed appellant on top of PFC HM, although he did not appear to be moving and his eyes were closed. Appellant's pants were down to his ankles and PFC HM's pants and underwear were pulled down. Private First Class LC testified that she did not see appellant's penis in PFC HM's vagina or notice appellant humping or kissing PFC HM. Private First Class LC closed the door and asked SPC KP, PFC HM's suitemate, what they should do. Private First Class LC then reentered the room, pulled appellant up by his shoulders, dragged him to the living room, and then pulled up his pants. Private First Class LC then went outside to smoke a cigarette. Private First Class LC testified she entered the room both times by herself; SPC KP and another government witness, SPC DC, did not enter the room with her.

Specialist KP, a government witness, testified she entered the room with PFC LC the second time the door was opened. Specialist KP testified she saw appellant on top of PFC KM making thrusting motions and heard wet noises. She claimed the room "smelled like sex," an observation not shared by PFC LC. Specialist KP testified appellant's penis was not soft, but it was wet. Specialist KP testified that

2

she yelled at appellant, calling him a rapist, which caused appellant to cry and apologize. KP testified that the next morning, she told PFC HM all of the details of the assault that she related during her testimony at trial.

Specialist DC, also a government witness, testified that he too entered the bedroom with PFC LC and SPC KP and saw them take appellant off of PFC HM. Specialist DC claimed appellant was thrusting his hips and SPC DC saw appellant's penis enter PFC HM's vagina. Later, in the living room, appellant told SPC DC that the sex with SPC KP was consensual.

As for Private First Class HM, her testimony did not add much to the events that occurred in the bedroom. She remembered being at the party and having a few drinks, but then remembered nothing else until the next morning. That morning, SPC KP told PFC HM that appellant was found in the room on top of PFC HM. However, SPC KP did not state that appellant was humping, thrusting, or kissing PFC HM. When she awoke, her jeans were down to her mid-thigh and her underwear was twisted. Private First Class HM testified that she did not consent to, or want to have sex with appellant. As for the morning after the incident, she experienced no soreness in her vagina and did not feel like she just had sex or as if she had been sexually assaulted. Further, there were no stains on her legs or the bedsheets.

## LAW AND DISCUSSION

Article 66(c), UCMJ, establishes our statutory duty to review a record of trial for legal and factual sufficiency de novo. *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003). Under Article 66(c), UCMJ, we may affirm only those findings of guilty that we find correct in law and fact and determine, based on the entire record, should be affirmed. *Id*. In weighing factual sufficiency, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "[A]fter weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we must be] convinced of the [appellant's] guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

As charged, the Article 120, UCMJ, offense of sexual assault required proof, beyond a reasonable doubt, that appellant penetrated PFC HM's vagina with his penis. *Manual for Courts-Martial* (2012 ed.), pt. IV, ¶¶ 45.b.(3)(e)(i), 45.b.(3)(f)(i). We find the evidence insufficient on this element.

As there is no physical evidence in the case and PFC HM has no memory of the event, our determination as to the factual sufficiency of appellant's conviction turns on the weight we give to the testimony and credibility of the witnesses. Distilled further, our determination rests on whether we put more weight into the testimony of SPC KP and SPC DC or PFC LC, the only witnesses who claim to have

seen appellant and PFC HM together on the bed immediately after entering the bedroom.

As for SPC KP, our doubts about her testimony are many. First, several witnesses shared their low opinion of SPC KP's character for truthfulness, as well as SPC KP's low reputation within the unit on this important trait. Second, SPC KP had a motive to fabricate, as the trauma she claimed to have suffered from witnessing this event were key factors in getting an exception to policy in order to obtain a service animal and achieve her longstanding wish to move out of the barracks. Third, her testimony was impeached in several instances by other witnesses. For example, SPC KP claimed that the morning after the incident, she told PFC HM everything she had witnessed in the bedroom. That is, what she related in her trial testimony was what she reported to PFC HM the morning after the party. By contrast, PFC HM was clear in her testimony that both SPC KP and PFC LC reported the next morning only that appellant was on top of PFC HM. Nothing more. In fact, when the incident was reported a few months later, PFC LC was surprised by the additional details related to SHARP personnel by SPC KP. In another example from the trial, SPC KP denied asking SPC MF about his Article 32 testimony, a denial later contradicted at trial by PFC MF. For these and other reasons, we find SPC KP's testimony was not credible.

Specialist DC's testimony as to what he witnessed in the bedroom is, in our view, problematic because many other witnesses place him elsewhere when PFC LC entered the bedroom and pulled appellant off the bed. Specialist CR testified SPC DC was in the living room on an armchair when PFC LC dragged appellant into the living room. Private First Class LC did not see SPC DC until after she left the barracks suite to go outside to smoke. Private First Class MF's testimony supported PFC LC's recollection, as he was with SPC DC at the smoke pit when PFC LC left the barracks suite after pulling appellant from the bedroom. While we did not discern from the record a motive for SPC DC to fabricate his testimony, we find it difficult to give it much weight. We note he did not provide a statement to CID until a year after the event, meaning even his recollection of the incident may have changed over time. In any event, we are not convinced that SPC DC was close enough to the bedroom to witness the detail of the interaction between PFC HM and appellant to which he testified. For that reason, we give SPC DC's testimony little weight.

We find PFC LC's testimony was credible. There is no dispute that she was the first person to enter the bedroom on both occasions, so she was best placed to observe appellant and PFC HM. Although PFC LC was intoxicated, her recollection of what she saw in the bed was clear. Since PFC LC was the person who pulled appellant out of the bed, she too was in the best position to observe whether appellant was engaged in intercourse with PFC HM and whether appellant was penetrating PFC HM's vagina. What PFC LC observed was appellant, with his pants down, asleep or passed out, on top of PFC HM, with her pants down, asleep or passed out. Nothing more.

4

Under the facts in this case, we cannot find beyond a reasonable doubt that appellant penetrated PFC HM's vagina with his penis. For that matter, we cannot conclude what transpired in the bedroom behind closed doors involving two drunk soldiers. For these reasons, we find the evidence factually insufficient.

## CONCLUSION

The findings of guilty and sentence are SET ASIDE. The Charge and its specification are DISMISSED.

Judge HAGLER and Judge FLEMING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court