# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class JOSWEL R. LINO**
**United States Army, Appellant**

ARMY 20170545

Headquarters, 7th Infantry Division
Lanny J. Acosta, Jr., Military Judge
Colonel Russell N. Parson, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany D. Pond, JA; Major Todd W. Simpson, JA; Captain Zachary A. Gray, JA (on brief and reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Captain John D. Martorana, JA (on brief).

25 April 2019

--------------------------------
SUMMARY DISPOSITION
--------------------------------

FLEMING, Judge:

Appellant asserts numerous reasons why his conviction for having sexual intercourse with a child's mother within the child's presence is legally and factually insufficient. We need only address one. Pursuant to our review of the record, we do not find the government proved the charged language of "sexual intercourse" beyond a reasonable doubt. We therefore hold appellant's conviction of that specification is factually insufficient.

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of sexual abuse of a child, in violation of Article 120b, Uniform Code of Military Justice, 10 U.S.C. § 920b [UCMJ]. The military judge acquitted appellant of a separate specification of sexual abuse of a child. The convening authority approved the adjudged sentence of a bad-conduct discharge and confinement for ninety days.

**BACKGROUND**

The government charged appellant with two offenses in what one witness described as "a one star motel [room]." More specifically, appellant was charged with: (1) committing a lewd act upon MW, a child under the age of 12, by touching her breasts and waist through her clothing, and (2) committing a lewd act upon MW by having sexual intercourse with her mother, Ms. JW, while MW was in the room. While the majority of the government's case related to the first offense (of which appellant was acquitted), we provide a broader context for the second offense.

At the time of the charged offenses, JW was unemployed and living in a motel room with her four children, all of whom were under the age of twelve. During this timeframe, JW would sometimes leave the children alone in the room without any supervision. MW, the oldest child, even testified they were left alone "all night" on a few occasions. MW further explained she was responsible for taking care of her younger sisters, and the children would "[eat] stuff that you could put water in and then heat up in a microwave." The motel room contained two beds; when she was there, JW slept on one bed, and the children slept on the other.

While living at the motel, JW brought numerous men into their room, to include appellant, whom she met on a website. After appellant arrived at the room, JW told him she was hungry, so he left and bought "McFlurries" for the group. After appellant returned, the children ate "McFlurries," watched a video on JW's phone, and then got ready for bed. As usual, the children got into one bed, and JW (and appellant) got in the other.

At trial, MW testified about what happened next. MW said her mother turned off the lights and then started "having sex" with appellant. MW said she learned about sex when she was "9 or 10" and it involves "[t]he penis and the vagina." When asked by the trial counsel how she knew they were having sex, MW explained she could hear "grunting, moaning, [and] kissing and shuffling around the bed" and "my mom's pants were off."

MW also said, however, that JW and appellant were "under" the blankets, and she could not tell whether appellant was wearing pants. Ultimately, MW saw "[JW] naked and [appellant's] upper half of his body." When asked to clarify, MW explained she saw JW naked when appellant "lifted his body up," but the blankets were still on top of "his bottom half."

Neither JW nor appellant testified at trial, but a local detective testified about appellant's statements during a police interview. In this interview, appellant admitted going to JW's hotel room and buying "McFlurries" for the group, but he adamantly denied touching MW or having sexual intercourse with JW in front of her children.

2

Immediately after the government rested its case, the defense made a motion for a finding of not guilty under Rule for Courts-Martial (R.C.M.) 917. In support of this motion, the defense counsel argued:

> . . . [T]here's absolutely no evidence before this court of actual sexual intercourse. The government has charged sexual intercourse. They have not charged simulated sexual act, there's been no evidence of penetration, in fact the complaining witness's testimony was that she could not tell if the pants were even off as it related to [appellant].
>
> . . .
>
> There's been no evidence at all that specifically goes to the charged act. The complaining witness described what she understood sexual intercourse to mean, abstractly. Then when asked specifically about what she observed in that moment, she did not describe any genitals that were exposed, she did not describe any penetration, she described sound that she heard. She described assumptions that she was making based off of what she knew sexual intercourse to be. There is no actual evidence that establishes that actual sexual intercourse occurred.

After the military judge denied this motion in citing the standards of R.C.M. 917, the defense rested without presenting any evidence. During closing argument, the defense made similar arguments related to the charged language:

> The government put up a slide that said [MW] experienced sounds, movement, and that she saw her mother's genitals. Sir, hearing sounds of grunting or moaning, seeing movement in another bed, does not sexual intercourse make . . . . The sounds that she heard, these movements that she saw could have been kissing, could have been cuddling, could have been, for lack of a better word, dry humping. These are not things that the accused was charged with. [MW] testified that she did not even know if the accused's pants were off because she never saw whether his genitals were exposed, she never saw anything below his waist. The fact that her mother may have been naked during this time does not necessarily mean that sex was happening.

3

**LAW AND DISCUSSION**

Article 66, UCMJ, establishes our statutory duty to review a record of trial for legal and factual sufficiency de novo. *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003). We may affirm only those findings of guilt that we find correct in law and fact and determine, based on the entire record, should be approved. *Id.*

In weighing factual sufficiency, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). To affirm a conviction, "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we must be] convinced of [appellant's] guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

Pursuant to our review of the record, we simply do not find the government proved the charged language of "[having] sexual intercourse" beyond a reasonable doubt.[1] As the defense counsel intimated, the government could have charged broader language to encompass a wider variety of sexual conduct, but it did not. It is clear that *something* of a sexual nature was happening under the blankets, but the evidence did not sufficiently prove that such activity involved "sexual intercourse."

In sum, after applying the specific facts of this case to the narrow language of the charged offense, we find appellant's conviction to be factually insufficient. We have reviewed the evidence, and we have taken into consideration that the military judge saw and heard the witnesses and we did not. However, we can only affirm a conviction when we are convinced of an appellant's guilt beyond a reasonable doubt. This is not such a conviction.[2]

---

[1] Appellant makes several additional arguments as to why his conviction is legally and factually insufficient, including that his conduct "could not be indecent under the circumstances" and "there was no evidence appellant 'intentionally' had sexual intercourse in the presence of a child." To be clear, our opinion does not rest or rely on any of these arguments, as we merely find the government did not prove the charged language of "sexual intercourse."

[2] We have also considered whether to affirm appellant's conviction by exceptions and substitutions. However, under the specific facts and circumstances of this case (to include the charged language and actions of the defense during trial), we find any such efforts would constitute a fatal variance. *See, e.g.*, *United States v. Hadley*, ARMY 20150766, 2017 CCA LEXIS 309 (Army Ct. Crim. App. 2 May 2017) (mem. op.).

**CONCLUSION**

The findings of guilty and the sentence are SET ASIDE.  Specification 2 of The Charge is DISMISSED.  All rights, privileges, and property of which appellant has been deprived by virtue of the findings and sentence set aside by this decision are ordered restored.  *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge BURTON and Judge HAGLER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court