# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Captain SPENCER D. DORR**
**United States Army, Appellant**

ARMY 20170172

Headquarters, Fort Hood
Jacob D. Bashore, Military Judge
Colonel Susan K. Arnold, Staff Judge Advocate

For Appellant: Captain Benjamin A. Accinelli, JA; William E. Cassara, Esquire (on brief); William E. Cassara, Esquire (on reply brief).

For Appellee: Colonel Steven P. Haight, JA; Captain Jeremy Watford, JA (on brief).

22 May 2019

---------------------------------
SUMMARY DISPOSITION
---------------------------------

BURTON, Senior Judge:

Appellant, serving as a cadre member, oversaw several ROTC students on a military training event in Vilnius, Lithuania. At the end of the mission, appellant allowed the cadets to consume alcohol and accompanied some of them to local restaurants and bars. In this opinion we address whether appellant's conviction for sexually assaulting a female cadet is factually sufficient. We find it is not.

A panel of officers sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of violating a lawful general order, one specification of sexual assault, and one specification of conduct unbecoming an officer and a gentleman in violation of Articles 92, 120, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920, 933 (2012) [UCMJ]. The panel sentenced appellant to a dismissal, confinement for seven years, forfeiture of all pay and

allowances, and a reprimand. This case is now before us for review under Article 66, UCMJ.[1]

## BACKGROUND

In June 2016, appellant served as a mission team leader for the Army's Cultural Understanding and Language Proficiency (CULP) program in Vilnius, Lithuania. The eleven cadets under appellant's charge spent almost a month in Lithuania participating in military engagements and training. Prior to deploying, appellant and the cadets were briefed on command policies that prohibited cadre members from fraternizing with the cadets and the consumption of alcohol while deployed.

On 23 June 2016, at the end of the mission, several of the cadets and appellant went into Vilnius for the evening. Appellant made clear to the cadets they were free to consume alcohol despite the command policy. Cadet (CDT) CR and two other cadets had dinner at a restaurant where they each had a glass of wine. Appellant and two other cadets had dinner at a separate restaurant and they also had a glass of wine.

After dinner, CDT CR and another cadet went shopping in town. She eventually met appellant and other cadets at a bar, the first they would visit that night. The entourage proceeded to drink as appellant regaled them with tales of his sexual exploits. Cadet CR drank two shots of a vodka, two Long Island Iced Teas, and four of five small beers served as part of a beer flight. Other cadets who were present testified at trial that CDT CR exhibited signs of intoxication, including slurred speech and consistent laughter. Appellant drank as well and purchased alcohol for some of the cadets. Appellant testified that while at the bar he was flirting with CDT CR. The flirting was so intense that at one point, while appellant was discussing oral sex with CDT CR, he broke a wine glass and cut his hand. After denying offers of medical attention, appellant and the cadets instead left to go to another bar.

After leaving the first bar, the group happened upon a Lithuanian student with whom they had interacted during the mission and one of her friends. The Lithuanian women suggested they visit a whiskey bar. After arriving at this, the second, bar, appellant, CDT CR, CDT SS, and then-Cadet CB continued drinking. CDT CR drank two "Jack Passions." While at this bar, appellant and CDT CR flirted with each other. The intensity of the flirting drew the attention of the Lithuanian women

---

[1] Our decision grants appellant the relief sought in his first assignment of error and, thereby, moots two other assigned errors. We find the remaining assignment of error concerning appellant's conviction under Article 92, UCMJ, for buying alcohol for the cadets under his charge lacks merit.

and CDT SS. When CDT CR went outside to smoke, CDT SS privately admonished appellant that his conduct with CDT CR was inappropriate and had to stop. Later, CDT SS similarly admonished CDT CR, who was visibly intoxicated. Cadet CR, after some apparent difficulty, responded, "I understand. You're right. Thank you." Despite these admonitions, appellant and CDT CR continued with their flirtatious behavior.

Ultimately, the group departed the bar at around 0300 on 24 June 2016. By all accounts, CDT CR was drunk. A closed circuit camera outside of the bar filmed the group, to include CDT CR and appellant, outside of the bar for about twenty-five minutes. The government introduced this video as a prosecution exhibit, which we discuss in detail below.

After leaving the bar, appellant and Cadets SS, CB, and CR took a taxi to the barracks. Appellant sat next to CDT CR in the back of the taxi and continued flirting and touching CDT CR. Appellant and CDT CR entered the checkpoint to the barracks and walked behind the other cadets. Cadet CR and appellant ended up in appellant's room.

At trial, appellant testified that he and CDT CR engaged in consensual sexual activity once in his room. Appellant described the encounter in great detail, noting how it at times became rough and that CDT CR bit him on various parts of his body, to include giving him visible hickeys on his neck, and caused bruising on parts of his body. Appellant further testified that he felt guilty because he knew he had cheated on his wife, who was pregnant at the time; however his sexual desires got the best of him. The next morning, CDT CR awoke, obtained her clothes, and returned to her barracks room.

By contrast, CDT CR testified at trial that the sexual encounter with appellant was not consensual. However, CDT CR recalled very little that occurred after the first bar. She didn't remember much from the second bar other than smoking and the drinks she had. She did not remember flirting with appellant or having sexually-charged discussions with appellant over the course of the evening. She remembers nothing about the sexual interaction with appellant, other than a snippet where appellant was on top of her, engaged in sexual intercourse, telling CDT CR that she was beautiful.

## LAW AND DISCUSSION

Article 66, UCMJ, establishes our statutory duty to review a record of trial for legal and factual sufficiency de novo. *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003). We may affirm only those findings of guilt that we find correct in law and fact and determine, based on the entire record, should be approved. *Id*.

In weighing factual sufficiency, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). To affirm a conviction, "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we must be] convinced of [appellant's] guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

We are not so convinced of appellant's guilt of sexual assault.

Appellant was charged with sexually assaulting CDT CR when she was incapable of consenting due to her impairment by alcohol. *See Manual for Courts-Martial, United States* (2016 ed.) [*MCM*], pt. IV, ¶ 45.b.(3)(f); UCMJ art. 120(b)(3)(f). For purposes of Article 120(b)(3), UCMJ, "incapable of consent" means an individual lacks "the cognitive ability to appreciate the nature of the conduct in question, [or] the mental and physical ability to communicate a decision regarding that conduct to the other person." *United States v. Pease*, 74 M.J. 763, 770 (N.M. Ct. Crim. App. 2015), aff'd 75 M.J. 180 (C.A.A.F. 2016). *See also United States v. Solis*, 75 M.J. 759, 763 (N.M. Ct. Crim. App. 2016) (Article 120 (b)(3) "does not proscribe sexual acts with impaired people, but rather with people incapable of consenting to the conduct at issue because of their impairment–and even then, only when the inability to consent is known, or reasonably should be known, to the accused.").

We have no doubt appellant committed a sexual act on CDT CR; appellant testified to this fact at trial. We also find CDT CR was credible and that she truly believed she did not consent to any sexual act with appellant. We cannot find beyond a reasonable doubt, however, that CDT CR was incapable of consent when the sexual act occurred. Key to our assessment is the twenty-five minute video taken outside the second bar, just before appellant and CDT CR returned to the barracks.

On the one hand, this video, with other testimony, clearly established CDT CR's impairment from her consumption of alcohol. Cadet CR is shown in the video stumbling and swaying at different times, sometimes getting support by leaning on appellant. Without question, she was drunk.

On the other hand, the video shows CDT CR conversed with appellant and cadets in the group, lit and smoked some cigarettes, navigated a curb by the street a number of times without falling, put her arm back in a sling she received for a previous injury, and even assisted appellant in donning his coat. Further, CDT CR is shown on the video reentering the bar and later returning to the group without assistance. When appellant drops something on the ground, CDT CR bends over to assist him in picking it up. Towards the end of the video, just before the group left

to catch a taxi, CDT CR leaned over and kissed appellant on the cheek. In short, despite her intoxication, CDT CR demonstrated her ability to understand her surroundings and freely interact with those around her, to include appellant.

Even though the video demonstrated her cognitive abilities prior to returning to the barracks, CDT CR, as she testified at trial, remembers little or nothing that occurred at the second bar, and later, in appellant's room. That lack of memory, however, does not equate with an inability to consent. When considering the video along with other evidence, such as the hickeys spotted by others on appellant's neck later that day, we simply cannot conclude beyond a reasonable doubt that appellant is guilty of sexual assault.

This is a difficult decision for us, as appellant's conduct towards CDT CR was opportunistic and reprehensible on many levels. His conduct falls far short of what is expected of an officer in charge of cadets or soldiers. Nonetheless, we find the finding of guilty as to the Specification of Charge III factually insufficient.

## CONCLUSION

The Specification of Charge III and Charge III is SET ASIDE and DISMISSED. The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the errors noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), and *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013).

In evaluating the *Winckelmann* factors, we first find a significant change in the penalty landscape, as the maximum period of confinement dropped from life without the possibility of parole to five years. However, this one factor is not dispositive. *Id.* at 15. We have extensive experience and familiarity with the remaining offenses and can reliably determine that the members would have sentenced appellant to at least a dismissal and a reprimand without the dismissed specification. We therefore AFFIRM only so much of the sentence as extends to a dismissal and a reprimand.

Judge HAGLER and Judge FLEMING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

5