**UNITED STATES of America**

v.

**Coty J. SAXMAN, Private First Class
(E–2), U.S. Marine Corps.**

**NMCCA 200900412.**

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 24 April 2009.

27 May 2010.

For Appellant: Capt Jeffrey Liebenguth, USMC.

For Appellee: Lt Brian Burgtorf, JAGC, USN.

Before MITCHELL, Senior Judge, MAKSYM, Senior Judge, and BEAL, Appellate Military Judge.

## PUBLISHED OPINION OF THE COURT

MAKSYM, Senior Judge:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of one specification of knowing possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(A), as charged under Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934. The appellant was sentenced to a bad-conduct discharge. The convening authority approved the sentence as adjudged.

On appeal, the appellant alleges that this court cannot properly conduct its Article 66, UCMJ, 10 U.S.C. § 866, review because the members found him guilty by exceptions and substitutions of possessing only four of the charged 22 videos, but did not specify which four videos formed the basis of their guilty finding.[1]

We have reviewed the record of trial, the pleadings of the parties and heard oral argument on 26 January 2010. We conclude that we cannot conduct a proper Article 66 review in this case. Accordingly, we set aside the findings and sentence and dismiss the charge and its sole specification.

---

1. The appellant withdrew his second assignment of error on 12 January 2010.

## FACTUAL BACKGROUND

On 14 December 2007, Naval Criminal Investigative Service (NCIS) Special Agent (SA) Sean Devinny initiated an undercover operation in order to identify and investigate Hawaii-based servicemembers in possession of child pornography on their personal computers. Record at 216. On that day, SA Devinny opened a peer-to-peer file sharing program on his computer and began inputting search terms indicative of child pornography into the program's search engine. *Id.* at 220. Within moments, the program had searched the internet and identified numerous files located on computers throughout the world whose names contained these terms, indicating to SA Devinny that the files likely contained child pornography. *Id.* at 221. Listed next to each file was an internet protocol (IP) address, a unique number that identified the computer from which each file was being shared. *Id.* at 205, 228.

SA Devinny next sorted through the list of IP addresses and identified an IP address in Hawaii from which a computer was sharing a file of child pornography. *Id.* at 228–29. Using this information, SA Devinny subpoenaed the Internet Service Provider (ISP) which owned the rights to assign the IP address in an attempt to identify the user of the address. *Id.* at 234. The ISP informed SA Devinny that the IP address was assigned to the appellant, who was then living in a barracks room at Marine Corps Base Kaneohe, Hawaii. *Id.* at 234, 236; Prosecution Exhibit 2 at 1.

SA Devinny subsequently sought and was given authorization to search the appellant's barracks room for computer media containing child pornography. *Id.* at 263. Prior to executing the warrant, however, SA Devinny decided to interview the appellant at the NCIS Kaneohe Bay Field Office. *Id.* at 236. During the interview, the appellant admitted that his computer contained images of child pornography, but denied knowing how the images got there. *Id.* at 242. The appellant stated that many different Marines had access to his computer and implied that others had downloaded child pornography to his computer without his permission or knowledge. *Id.*

Following the interview, SA Devinny and SA Paul Lerza searched the appellant's barracks room, seized the appellant's desktop computer, and entered the computer into evidence. *Id.* at 246, 265, 267. Several weeks later, NCIS sent the computer to the Defense Computer Forensic Laboratory (DCFL) for analysis to determine if the computer's hard drive contained any images of child pornography. PE 2 at 1.

After the computer arrived at DCFL, forensic examiner Michael Donhauser and other DCFL technicians conducted an examination of the computer's hard drive and discovered 22 videos they believed to be child pornography. *Id.* at 295, 330. Once they identified the 22 videos, Mr. Donhauser compared the videos to images in a database compiled by the National Center for Missing and Exploited Children (NCMEC). *Id.* at 481–82. The database contained a collection of pornographic images depicting "known child images," images that have been identified by NCMEC experts as depicting children who are under the age of consent. *Id.* at 481. Utilizing this database, Mr. Donhauser determined that of the 22 videos on the appellant's hard drive, only four contained videos with "known child images." *Id.* at 483.

The Government preferred charges against the appellant on 16 May 2008. The charge sheet read, in pertinent part:

> In that [the appellant] . . . did, at Building 7062, on board Marine Corps Base, Kaneohe Bay, Hawaii, on or about December 14, 2007, knowingly possess, on land under the control of the Government of the United States, 22 video files of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(A).

Trial commenced almost one year later, on 6 April 2009. During trial, the defense attacked the Government's case from several angles, including by advancing a theory that another Marine with access to the appellant's computer had downloaded child pornography to the computer without the appellant's knowledge.

The military judge instructed the members, after the defense case but prior to

closing arguments, as to the elements of the offense:

> In order to find the accused guilty of this offense, you must be convinced by legal and competent evidence beyond a reasonable doubt:
>
> One, that . . . the accused knowingly possessed 22 video files of child pornography;
>
> Two, that the accused did so in the special maritime and territorial jurisdiction of the United States . . . ;
>
> Three, that at the time the accused knew the material he possessed contained an image of child pornography; . . .
>
> Four, that the accused's acts were wrongful; and
>
> Five, that at the time Title 18, U.S.Code Section 2252(a)(5)(A) [sic] was in existence.

Record at 759–60. The military judge then supplemented his recitation of the elements and provided the members with additional information, including, *inter alia,* an instruction that:

> The offense of possession requires the accused to have knowingly possessed material containing an image of child pornography and to have known that the image was child pornography.

*Id.* at 762–63. Upon a request from trial counsel for a variance instruction and likely recognizing that the evidence raised during trial might lead to an acquittal on some but not all of the images, the military judge then instructed the members on the option of finding guilt by exception and substitution. *Id.* at 766; Appellate Exhibit XXXVI.

> If you have a reasonable doubt that the accused possessed 22 images of child pornography, but you are satisfied beyond a reasonable doubt that he did possess a lesser amount of child pornography, and that all of the other elements have been proved beyond a reasonable doubt, you may still reach a finding of guilty.
>
> Should this occur, you must modify the specification to correctly reflect your findings. You may change the amount described in the Specification and substitute any lesser specific amount as to which you have no reasonable doubt.

*Id.* at 766. The military judge failed to further instruct the members that if they convicted the appellant by exceptions and substitutions, they needed to identify the specific videos which had formed the basis of their guilty finding.

Closing arguments followed the military judge's instructions. In support of his theory that others had surreptitiously downloaded child pornography to the appellant's computer, civilian defense counsel argued that there was limited evidence, if any, that the appellant had ever viewed the videos DCFL discovered on his hard drive:

> [A]t most only 4 of the 22 [videos] were ever even opened. . . . Four. The other 18 there's no evidence that they were ever opened at all.
>
> . . . .
>
> [Mr. Donhauser] found no evidence that [the appellant] opened up and viewed any of the 22 videos. At most, as he said, 4 of them were opened at all, but he doesn't know by whom or under what circumstances or how much was seen.

*Id.* at 778 and 784 respectively.

The members began deliberating after closing arguments, but interrupted their deliberations to ask the military judge whether, if they decided to except the number 22 and substitute another figure, they were required to agree on the substituted figure by a simple majority or a 2/3 vote. *Id.* at 793; AE LXVII.

The military judge instructed the members that they were required to examine each video independently and determine whether, by a 2/3 vote, each video met the elements of the offense. Record at 793–94.

> So you're going to have to take all 22 of them and you're going to have to decide, and the vote always has to be [two-thirds] or more for it to meet the element. And if you do 22 and you only have 6 that meets the two-thirds vote, then you would have to modify the specification to reflect the findings of the Court.

*Id.* at 794. At the conclusion of their deliberations, the president of the court announced that the members had found the appellant "guilty except for the figure '22' substituting

the figure '4.'" *Id.* at 797.[2] The military judge accepted this finding without requiring the members to specify exactly which four of the twenty-two video files they convicted the appellant of possessing. It is this finding that the appellant now challenges on appeal.

## DISCUSSION

At issue in this case is whether this court can properly conduct its Article 66, UCMJ, review when the members did not specify which four of the 22 video files they had found the appellant guilty of possessing. *See United States v. Walters,* 58 M.J. 391, 397 (C.A.A.F.2003); *United States v. Smith,* 39 M.J. 448, 451 (C.M.A.1994). In order to squarely address this question, we must first discuss the manner in which the Government charged the alleged offense and the military judge's instructions to the members.

**The Government's Charging Decision and 18 U.S.C. § 2252A**

■ With the passage of the Child Pornography Prevention Act of 1996, 18 U.S.C. § 2252A, Congress took action to address the impact of advances in computer technology on the recording, creation, alteration, production, reproduction, distribution and transmission of visual depictions of child pornography. S.Rep. No. 104–358, at 7 (1996). Among other things, the Act for the first time expressly criminalized the possession of child pornography in digital form on a computer disk. The subsection of the act charged by the Government in this case, 18 U.S.C. § 2252A(a)(5)(A), specifically targets any person who:

> [I]n the special maritime and territorial jurisdiction of the United States, or on any land or building owned by, leased to, or otherwise used by or under the control of the United States Government, or in the Indian country ... knowingly possesses, or knowingly accesses with intent to view, *any book, magazine, periodical, film, videotape, computer disk, or any other material that contains* an image of child pornography.... (Emphasis added).

The plain language of the statute is important because, rather than criminalizing the possession of an intangible, electronic file that depicts an individual image of child pornography, we believe the statute criminalizes the possession of a tangible physical object, such as "any book, magazine, periodical, film, videotape, computer disk, or any other material" which contains at least one image of child pornography.

In interpreting a statute, we must first look to the language of the statute. *United States v. Guess,* 48 M.J. 69, 71 (C.A.A.F.1998)(citing *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)). If the statute is unambiguous, in the absence of " 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.' " *Turkette,* 452 U.S. at 580, 101 S.Ct. 2524 (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). The words in a statute should typically be given their "ordinary and natural" meaning. *Bailey v. United States,* 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

We believe the language of 18 U.S.C. § 2252A(a)(5)(A) unambiguously criminalizes the possession of a tangible physical object, such as a computer disk, which contains at least one image of child pornography. Our interpretation of the statute squares with that of other federal courts. *See e.g. United States v. Overton,* 2009 U.S.App. LEXIS 20818 (9th Cir.2009); *United States v. Planck,* 493 F.3d 501, 504 (5th Cir.2007) (discussing propriety of charging one count of possession for each piece of media possessed); *United States v. Thompson,* 281 F.3d 1088, 1090–91 (10th Cir.2002)(drawing distinction between properly charging one count of possession for each piece of media but then examining the number of files possessed on that media to determine a sentence).

In this case, the child pornography at issue was found on the hard drive of the appellant's desktop computer. A hard drive is a "computer's internal disk drive using a non-

---

2. The findings worksheet states more accurately the finding: "Guilty except for the figure '22' substituting the figure '4' of the excepted figure **not guilty** of the specification guilty." AE LXVI.

removable storage format. [It is] used for the storage of data, documents and the computer's programs and operating system." [3] Similar to the computer disk described in 18 U.S.C. § 2252A(a)(5)(A), a hard drive is a physical location upon which a computer user stores data in a digital format.

However, instead of charging the appellant with possession of a hard drive containing an image of child pornography, the Government advanced the theory within its specification that the appellant knowingly possessed "22 **video files of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(A)."** We note that the specification, as pled in this case, does not expressly state all of the elements of the offense set forth under 18 U.S.C. § 2252A(a)(5)(A). Specifically, the specification fails to expressly allege possession of some *material* that contains *an image* of child pornography.

The Government's theory, reflected in the language of the charge and specification, plays a crucial role in this case as both parties and the military judge relied upon this theory throughout the course of the trial. During closing argument, for example, the Government analogized a digital computer video file to the "film" listed in 18 U.S.C. § 2252A(a)(5)(A) and asked the members to return a finding of guilty on all 22 films. Record at 768; AE LXIII at 2. Conversely, the appellant attacked the Government's theory by arguing that the appellant knowingly possessed a much smaller number of files than 22. Record at 778, 781. Finally, as detailed above, the military judge instructed the members based upon the Government's theory. *Id.* at 759–60.

Appropriately, the judiciary plays no role in the manner in which the Government advances a charge or the language it deploys to express it. However, to be clear, had the Government pled its case differently, the members might well have reached a different and less assailable finding. As charged, the members could have convicted by exceptions and substitutions as to 21 of 22 videos referred to within the specification and our quandary would not be relieved. The Gov-

ernment chose the verbiage within the specification and formulated a theory around same, and must now be burdened with all of the consequences attendant to its independent charging decision, including the ambiguous findings handed down by the members.

For the purpose of the analysis which follows, we will assume without deciding that a digital video file is the functional equivalent of the tangible physical media listed in 18 U.S.C. § 2252A(a)(5)(A).

## The Ambiguity Created by the Members' Finding

■ Article 66, UCMJ, requires a court of criminal appeals to conduct a *de novo* review of the factual and legal sufficiency of each conviction before it. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F.2002)(citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A.1990)). This court may affirm only those findings of guilt that it finds correct in law and fact and determines, on the basis of the entire record, should be approved. Art. 66, UCMJ. While the power conferred by Article 66 upon this court is an " 'awesome, plenary, *de novo* power of review,' " it is not without limits. *See Smith*, 39 M.J. at 451 (quoting *Cole*, 31 M.J. at 272). This court, for instance, may not find as facts allegations contained in a specification of which the factfinder has found an accused not guilty. *Smith*, 39 M.J. at 451–52 (citing *United States v. Nedeau*, 23 C.M.R. 182, 185, 1957 WL 4457 (C.M.A.1957); *United States v. Hogan*, 20 M.J. 221 (C.M.A.1985)).

■ The Court of Military Appeals (C.M.A.) articulated this principle in *Smith*. In *Smith*, a military judge found the accused not guilty by exceptions and substitutions of some of the factual allegations contained in his charged specification. *Smith*, 39 M.J. at 449. Upon review, the Army Court of Military Review affirmed the accused's conviction, but did so based upon findings of fact which conflicted with the military judge's findings of not guilty. *Id.* at 450. The C.M.A. reversed the conviction, stating that a Court of Military Review may not "find as facts allegations in a specification which a

**3.** Harvard University, Berkman Center for Internet and Society, Student Glossary, <http://cyber. law.harvard.edu/readinessguide/glossary.html> (visited 29 Jan 2010).

factfinder has found an accused not guilty of," even when evidence in the record may support such a finding. *Id.* at 451–52.

This limiting principle has also recently been applied in *Walters* and its progeny. *See also, e.g., United States v. Augspurger,* 61 M.J. 189 (C.A.A.F.2005); *United States v. Seider,* 60 M.J. 36 (C.A.A.F.2004). In *Walters,* the Government charged the accused with one specification of using ecstasy "on divers occasions" between April and July 2000. 58 M.J. at 391–92. At trial, the Government presented evidence of multiple ecstasy uses. When the members returned their verdict, they found the accused guilty by exceptions and substitutions, finding the accused not guilty of the words "on divers occasions" and substituting therefore and finding the accused guilty of the words "on one occasion." *Id.* at 394. On appeal, Walters asserted that the Air Force Court of Criminal Appeals could not conduct its Article 66 review because the members' ambiguous finding did not indicate of which ecstasy uses the members had acquitted him. The Court of Appeals for the Armed Forces (C.A.A.F.) agreed, stating that the Air Force court "could not conduct a factual sufficiency review of Appellant's conviction because the findings of guilty and not guilty do not disclose the conduct upon which each of them was based." *Id.* at 397.

The Government asks us to analogize this case to *United States v. Brown,* where a military judge instructed the members on three different theories of indecent assault and the members convicted the accused without specifying upon which of the three theories they had based their guilty finding. 65 M.J. 356, 358 (C.A.A.F.2007). C.A.A.F. ultimately affirmed the *Brown* conviction and concluded that no findings ambiguity existed in the case which precluded Article 66 review. *Id.* at 358. Contrary to the Government's position, we believe *Brown* to be inapposite to the present case because it did not involve a finding of not guilty, the specific feature of this case, *Smith* and *Walters* which makes review under Article 66 impossible.

We believe the Government's charging decision, the military judge's instructions, and the members' not guilty findings from which the court failed to secure clarification, have left us in a situation where we cannot initiate review of this conviction under Article 66. Without knowing of which 18 videos the appellant stands acquitted, we cannot now affirm a conviction for *any* video without creating a risk that doing so will overturn the members' not guilty findings.

We have contemplated returning this case for a hearing in revision pursuant to R.C.M. 1102 at which the members would be individually polled to determine the factual basis for their verdict. Without deciding the legal propriety of such a hearing, we conclude that such a hearing, given the particular facts of this case, would lack both feasibility and practicality. Moreover, such a process would almost certainly result in impermissible redeliberation on findings or other actions expressly prohibited by MILITARY RULE OF EVIDENCE 606(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.).

### CONCLUSION

We conclude that an Article 66 review in this case is impossible. Accordingly, we set aside the finding of guilt on Specification 1 of the Charge and the sentence. As a rehearing would subject the appellant to double jeopardy, we dismiss the charge and specification with prejudice. *See Walters,* 58 M.J. at 397.

Senior Judge MITCHELL and Judge BEAL concur.