# UNITED STATES NAVY–MARINE CORPS
# COURT OF CRIMINAL APPEALS

———————————————

### No. 201500340

———————————————

### UNITED STATES OF AMERICA
Appellee

v.

### DARRELL T. PETERSON
Chief Warrant Officer 3 (CWO-3), U.S. Navy
Appellant

———————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Captain Charles N. Purnell, JAGC, USN.
Convening Authority: Commander, Navy Region Mid-Atlantic,
Norfolk, VA.
Staff Judge Advocate's Recommendation: Captain Andrew R. House,
JAGC, USN.
For Appellant: Captain Daniel R. Douglass, USMC.
For Appellee: Major Cory A. Carver, USMC; Lieutenant Commander
Justin C. Henderson, JAGC, USN; Captain Matthew M. Harris,
USMC.

———————————————

Decided 28 February 2017

———————————————

Before PALMER, MARKS, and JONES, *Appellate Military Judges*

———————————————

**This opinion does not serve as binding precedent, but may be cited
as persuasive authority under NMCCA Rule of Practice and
Procedure 18.2.**

PALMER, Chief Judge:

A panel of officer members, sitting as a general court-martial, convicted the appellant, contrary to his pleas, of three specifications of making a false official statement and one specification of larceny, in violation of Articles 107 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907 and 921

(2012). The convening authority approved the adjudged sentence of one year of confinement, a fine of $25,000.00, and a reprimand.

The appellant asserts three assignments of error (AOE):[1] (1) the evidence is legally and factually insufficient; (2) the members' guilty finding, by exceptions and substitutions, to the sole specification under Charge II rendered the verdict ambiguous, and thus unreviewable, under Article 66, UCMJ; and (3) the military judge committed plain error by instructing the members that, "[i]f, based on your consideration of the evidence, you are firmly convinced that the accused is guilty of the crime charged, you must find him guilty."[2]

After carefully considering the pleadings and the record of trial, we find no error materially prejudicial to the substantial rights of the appellant and affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

From 2001 through 2014, the appellant was assigned to commands or ships home-ported in the Hampton Roads, Virginia, area.[3] At various periods throughout that time frame and specifically from 1 January 2010 through 28 February 2014, the appellant requested and was paid Basic Allowance for Housing (BAH) and Cost of Living Allowance (COLA) based on the rate established for dependents living in New York. Evidence presented at trial demonstrated that the appellant's dependents lived in Hampton Roads; by claiming they lived in New York he received $62,348.20 more BAH and COLA than he would have received had he claimed them as Hampton Roads residents. The appellant's dependents included his spouse, Mrs. ZP, their two children SP and TP, and another child, LP, from a prior marriage. During the charged period, the appellant listed a house he owned in New York as his dependents' primary residence on a December 2012 application for BAH and COLA. The appellant's claimed entitlement to New York BAH and COLA was also based on information he provided to his command on various NAVPERS 1070/602 ("Page 2") forms, signed on 19 February 2011, 15 November 2012, and 1 June 2013. On each Page 2 form he certified that his dependents lived at his property in New York. The appellant concedes he signed the application and Page 2s, and further agrees he was paid and received the New York BAH and COLA during the charged period. At trial, the appellant argued that his wife and children lived at the New York property at least

---

[1] We have reordered the assignments of error raised in the appellant's brief.

[2] Record at 668-69.

[3] Hampton Roads refers to a region in Virginia which encompasses multiple independent localities, including Chesapeake, Norfolk, Virginia Beach, and Portsmouth.

part-time, that any errors on his Page 2s were due to negligence and were unintentional, and that he assumed his chain of command would verify his entitlement to BAH.

## II. DISCUSSION

### A. Factual and legal sufficiency

We review questions of legal and factual sufficiency *de novo. United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is whether "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006) (citing *Turner*, 25 M.J. at 325 and Art. 66(c), UCMJ), *aff'd on other grounds*, 64 M.J. 348 (C.A.A.F. 2007). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. While this is a high standard, the phrase "beyond a reasonable doubt" does not imply that the evidence must be free from conflict. *Rankin*, 63 M.J. at 557.

In order to convict the appellant of making false official statements in violation of Article 107, UCMJ, (Specifications 1, 2, and 4 of Charge I) the government had to prove beyond a reasonable doubt:

> One, that on the charged dates the accused signed certain official documents, to wit: NAVPERS 1070/602 forms;
>
> Two, that the documents were false in that they listed Mrs. ZP, his dependent spouse, as living in New York;
>
> Three, that the accused knew the documents to be false at the time he signed them; and

Four, that the false documents were made with the intent to deceive.[4]

In order to convict the appellant of larceny in violation of Article 121, UCMJ, (Charge II and the Specification thereunder) the government had to prove beyond a reasonable doubt:

One, that on divers occasions between on or about 1 January 2010 and 28 February 2014, the accused wrongfully obtained certain property, that is, BAH and COLA from the possession of the United States;

Two, that the property belonged to the United States;

Three, that the property was of some value;

Four, that the obtaining by the accused was with the intent to permanently defraud the United States of the use and benefit of the property or permanently to appropriate the property to the accused's own use or the use of someone other than the owner; and

Five, that the property was military property.[5]

Although stating he did not carefully review them, the appellant admits he signed the Page 2 forms. Further, the appellant does not contest that the BAH and COLA originally belonged to the United States, was of some value, was military property, and that he obtained the property.

To support the remaining elements of both charges, the government offered, and the members considered:

1. Mrs. ZP's testimony that she lived in Chesapeake, Virginia, with the appellant since 2004; that she worked in the Hampton Roads area; that their children were born in Portsmouth, Virginia, and they attended schools and participated in extra-curricular activities in Hampton Roads; and that she only visited their New York house a couple times to assist the tenants who resided there.

2. School records and transcripts indicating the appellant's children, SP and TP, attended Hampton Roads schools throughout most of the charged period.

---

[4] Record at 657-60; MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 31b.

[5] Record at 662; MCM, Part IV, ¶ 46b.

3. The testimony of a neighbor, TP's godfather, that he saw the appellant's family nearly every day, and often two or three times a day, at their Chesapeake home during the charged period.

4. The stipulated testimony of JS, who lived as a government-subsidized tenant in the appellant's New York home during the charged period, that since 2006 she had seen Mrs. ZP at the property only a couple of times—although there was a basement with a separate entrance in the house from which she occasionally heard the sound of a television.

5. The testimony of a Naval Criminal Investigative Service (NCIS) special agent that the Chesapeake house Mrs. ZP claimed as her marital residence, and that he searched, was a family domicile with rooms filled with furniture, children's toys, woman's clothing, and displayed photographs of the appellant and Mrs. ZP.

6. The testimony of a government expert witness, who had reviewed the applicable service housing regulation (Prosecution Exhibit 5), that a Sailor who requests BAH based on dependents' location must periodically verify the accuracy of his Page 2s, including dependent addresses. The expert also testified that a "residence" is, "where they live. . . mean[ing] they live there, they work there, their kids. . . are enrolled in schools near there . . . ."[6] He further testified that no specific duration is required to establish dependent residences, but if a residence changes, the BAH applicant must complete another Page 2 verifying a new address.

7. Evidence that the appellant's signed Page 2s from 2004, 2005, 2007, and 2008 also contained false information—including false verification in 2004 that he was still married to his former spouse despite their 1999 divorce—admitted for the limited purposes of demonstrating the appellant's intent to deceive when signing near-identical Page 2s during the charged period, to demonstrate his intent to deceive by making prior false representations on his BAH applications, and to rebut his contention that he was ignorant of the Page 2s' content.[7]

In his defense, the appellant testified that although his children attended Virginia schools, his wife and children lived in New York during the summer. Thus, he believed the family resided in New York, and he admitted, "I never

---

[6] Record at 432.

[7] This evidence was also admitted to support the appellant's claim that he was simply inattentive to details and did not read or review his Page 2s before signing them.

5

took Page 2s seriously, [did not review them] like I should have [and] I was bad at Page 2s."[8]

The appellant's New York property manager, and long-time friend, testified that the New York house has a downstairs kitchen, bathroom, and single bedroom. He stated Mrs. ZP visited the house "[a] lot of times, different times, like summer times, holidays, yeah, 'cause when I would come there, I would see her . . . ."[9] The appellant's cousin, another witness, also testified she had seen Mrs. ZP in New York several times.

We find that Mrs. ZP lived, worked, and raised her children in the Hampton Roads area. While residing in the same Chesapeake house, the appellant's daughters received local medical care, attended local schools, and participated in local organized youth activities. Although the appellant was often at sea, the record is clear that he owned the Chesapeake house as a marital abode and lived there with his family when he was ashore—a fact confirmed by the appellant's neighbor and godfather to his youngest daughter. It strains credulity that the appellant, a prior Navy senior chief and a warrant officer since 2007, who at the time of trial had 23 years' service, believed that dependent visits during vacations and holidays entitled him to receive New York BAH and COLA rates. The far more plausible explanation, supported by his years of verifying false Page 2 information that netted him an additional $1,272.00, on average, in monthly allowances, was financial gain through intentional false representations.

Weighing all the evidence presented at trial, and making allowances for not having personally observed the witnesses, we are persuaded beyond reasonable doubt that the appellant was properly convicted of making false official statements and committing the larceny of government property. We are similarly satisfied that the appellant's court-martial was legally sufficient.

**B. Ambiguous verdict**

The appellant was charged with stealing $62,348.20 in BAH and COLA from the United States on divers occasions between 1 January 2010 and 28 February 2014. At trial, the members were instructed and then presented with a findings worksheet that gave them the option to find the appellant either: (1) not guilty; (2) guilty of larceny of more than $500.00; (3) guilty of larceny of less than $500.00; or (4) guilty of larceny of an amount to be

---

[8] Record at 564 and 586.

[9] *Id.* at 596

written in by the members.[10] Following deliberations, the members found the appellant guilty of stealing $54,026.20.[11] The appellant argues this substitution violates Double Jeopardy principles, renders impossible our ability to determine which incident the appellant was found guilty or not guilty of, and precludes our ability to conduct a factual sufficiency review. We disagree and find no ambiguity in the findings.

We review *de novo* the question of whether there is any ambiguity in the findings that prevents us from conducting our factual sufficiency review under Article 66(c), UCMJ. *See United States v. Rodriguez*, 66 M.J. 201, 203 (C.A.A.F. 2008); *United States v. Brown*, 65 M.J. 356, 358-59 (C.A.A.F. 2007).

The appellant anchors his argument in two cases, *United States v. Walters*, 58 M.J. 391 (C.A.A.F. 2003) and *United States v. Saxman*, 69 M.J. 540 (N-M. Ct. Crim. App. 2010). These anchors, however, are misplaced, as these cases are easily distinguished from the case *sub judice*. In *Walters*, when the members excepted certain drug uses from the sole guilty finding, they also, without providing further explanation, excepted the words on "divers occasions" and thus made it impossible for an appellate court to determine what "specific instance of conduct upon which their modified findings [were] based." *Walters*, 58 M.J. at 396. In *Saxman*, the members used exceptions and substitutions to find the accused guilty of possessing 4 of 22 child pornography video files alleged in a single specification. The specification did not allege possession on divers occasions or otherwise describe where and how the accused possessed the files. As such, this court was unable to determine which video files the accused was acquitted of possessing, could not review the conviction under Article 66, UCMJ. *Saxman*, 69 M.J. at 545.

The narrow holding in *Walters* does not apply here because the members did not except the words "on divers occasions." Instead, they only found a lesser value in stolen property. Furthermore, the members did not acquit the appellant of any specific act. Rather, they reached a general verdict, based on multiple acts, resulting in a theft of $54,026.20, thus making *Saxman* inapplicable. It is well-settled that, "[w]hen members find an accused guilty of an 'on divers occasions' specification, they need only determine that the accused committed two acts that satisfied the elements of the crime as charged—without specifying the acts, or how many acts, upon which the

---

[10] At trial, the appellant objected to neither the military judge's variance instruction advising the members they may find guilt on a lesser amount, nor the findings worksheet, which gave them the option to write in a lesser amount. *Id.* at 632-33, 664 and Appellate Exhibit XXXV at 5.

[11] Appellate Exhibit XXXVI at 2 and Record at 738-39.

conviction was based." *Rodriguez*, 66 M.J. at 203. Furthermore, "[t]he longstanding common law rule is that when the factfinder returns a guilty verdict on an indictment charging several acts, the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Id.* at 204 (citing *Griffin v. United States*, 502 U.S. 46, 49, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991)). *See also United States v. Jones*, 66 M.J. 704, 708, (A.F. Ct. Crim. App. 2008) (holding when a conviction for misusing a Government Travel Card on divers occasions is supported by evidence of at least two acts of misuse, it will not render a verdict ambiguous). So too here.

The record established that during the charged period the appellant was paid, via monthly installments, $62,348.20 more BAH and COLA than he would have been entitled to at the Hampton Roads area rates, and that on three occasions during the same period he falsely claimed his dependents resided in New York. The members' decision to reduce the larceny amount by $8,322.00 is readily explained. At trial, Mrs. ZP testified that the appellant's daughter, SP, lived in New York for six months, from January to June 2010.[12] The appellant similarly testified, "there was a time when [SP] was in school in New York, so I—I know she was there then[.]"[13] SP's Hampton Roads area school records do not show SP attending school until July 2010.[14] And, finally, the government's own expert testified that an indicia of residency for BAH purposes was being enrolled in local schools.[15] Using Prosecution Exhibit 8, which depicts the itemized amounts the appellant was overpaid during the charged period, we calculate six months of overpaid BAH and COLA, using 2010 rates, as exactly $8,322.00. This value, coupled with the "divers occasions" in which the appellant improperly received BAH and COLA during the charged period, supports the members' decision. We are satisfied jeopardy has attached for the entire charged period and are similarly convinced the verdict was not ambiguous.[16]

---

[12] *Id.* at 544-45.

[13] *Id.* at 570.

[14] Prosecution Exhibit 12 at 2-6.

[15] *Id.* at 432.

[16] Another possible explanation for the reduced larceny value conviction relates to the appellant's acquittal on Specification 3 of Charge I (falsely verifying a Page 2 dependent address on 4 December 2012) and conviction for Specification 4 (wherein, almost exactly six months later, he signed a nearly identical Page 2 on 1 June 2013). Assuming, *arguendo*, that this six-month period formed an equally plausible explanation for the reduced verdict value, we still find a course of conduct in which the appellant engaged in multiple acts of larceny on divers occasions during the charged period. If unable to resolve the ambiguity between the two six-month periods, we would have reduced another $8,322.00 and amended the findings to

## C. Instructional error

Consistent with the recently-decided *United States v. McClour*, __ M.J. __, No. 16-0455, 2017 CAAF LEXIS 51 (C.A.A.F. 24 Jan. 2017), we find that, absent objection at trial, the reasonable doubt instruction here did not constitute plain error. Accordingly, we summarily reject this AOE as meritless. *United States v. Clifton*, 35 M.J. 79, 81 (C.M.A. 1992).

### III. CONCLUSION

The findings and sentence are affirmed.

Judge JONES concurs.

MARKS, Senior Judge (concurring in part and dissenting in part):

I would affirm the guilty findings to Charge I and its three specifications, Charge II, and the sole specification of Charge II in so much as the appellant stole funds of some value more than $500.00. I do not share the majority's certainty regarding the members' substituted findings as to this specification. The retention of "on divers occasions" in the specification does not overcome the members' substitution of a lower, but still very specific, amount of funds stolen. The substitution necessarily acquits the appellant of stealing $8,322.00 of BAH and COLA. Those dollars cannot be disassociated from the specific dates they were disbursed.

As the majority believes, that $8,322.00 reduction may represent the BAH and COLA the appellant received during the six-month period from January to June 2010, when his daughter, SP, lived in New York. The math supports their conclusion. But the members' finding that the appellant did not falsify his 4 December 2012 Page 2 is more compelling to me. That Page 2 determined his pay and allowances until he signed a new Page 2 six months later in June 2013. The members convicted the appellant of falsifying the June 2013 Page 2. I believe this six-month period from December 2012 to June 2013 is the more likely source of the six-month reduction in the amount of the appellant's ill-gotten BAH and COLA. I concede that the members' calculations reflect 2010, not 2012 or 2013, rates and cannot explain the discrepancy. Ultimately, I find the members' findings are ambiguous as to which payments totaling $8,332.00 the appellant did not steal.

reflect larceny of $45,704.20. Art 66(c), UCMJ. In reassessing the appellant's sentence, we would have confidently and reliably determined that the appellant's sentence would still include one years' confinement, a $25,000.00 fine, and a reprimand. *See United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013).

To affirm the appellant's conviction for theft of $54,026.20, we must be able to review its legal and factual sufficiency without "find[ing] as fact any allegation in a specification for which the fact-finder below has found the accused not guilty." *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003) (citing *United States v. Smith*, 39 M.J. 448, 451-52 (C.M.A. 1994)). If we are unable to distinguish the dollars the appellant did not steal from the dollars he stole, the holdings in *Walters* and *Saxman* suggest we are unable to review the conviction in compliance with Article 66, UCMJ. But the facts in this case differentiate it from *Walters* and *United States v. Saxman*, 69 M.J. 540 (N-M. Ct. Crim. App. 2010). *See United States v. Seider*, 60 M.J. 36, 39 (C.A.A.F. 2004) (Crawford, C.J., dissenting) ("Given the myriad of factual scenarios which might generate a charge of committing an offense on 'divers occasions,' this Court should address the issue presented through a fact-specific inquiry with a fact-specific holding, interpreting *Walters* through the lens of its unique facts.").

The evidence is clear that the appellant stole thousands of dollars in BAH and COLA in a continuous course of conduct initiated by his submission of a false Page 2 and occasionally affirmed by his signature on a new Page 2 perpetuating the same false pretense. Based on their findings regarding both false official statements and larceny, we can conclude that the members found the appellant used his Page 2 forms to defraud the government of BAH and COLA more often than he did not. The members' constructive exception of $8,322.00—or six months' worth—of BAH and COLA at 2010 rates and acquittal of that exception must reflect some temporary set of exculpatory circumstances. Our inability to pinpoint the months in which those circumstances arose and thus replicate the members' calculations does not preclude us from affirming the conviction for theft on divers occasions between 1 January 2010 and 28 February 2014 of funds of some amount more than $500.00. The ambiguity stems from the specific dollar figure cited, so I would expunge the specific dollar figure and affirm a more general specification.

Applying the sentence reassessment factors in *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013), and finding no changes in penalty exposure, gravamen of criminal conduct, or admissible aggravating circumstances, I would not reassess the sentence but affirm it as adjudged.

For the Court

R.H. TROIDL
Clerk of Court

