# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————————

## No. 201600083

———————————————

## UNITED STATES OF AMERICA
Appellee

v.

## MICHAEL R. TINSLEY
Sergeant (E-5), U.S. Marine Corps
Appellant

———————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Major Mark D. Sameit, USMC.
Convening Authority: Commanding Officer, Headquarters and Headquarters Squadron, Marine Corps Air Station Miramar, San Diego, CA.
Staff Judge Advocate's Recommendation: Lieutenant Colonel Todd J. Enge, USMC.
For Appellant: Lieutenant Rachel E. Weidemann, JAGC, USN.
For Appellee: Lieutenant Megan P. Marinos, JAGC, USN; Lieutenant Robert J. Miller, JAGC, USN.

———————————————

Decided 6 July 2017

———————————————

Before GLASER-ALLEN, MARKS, and JONES, *Appellate Military Judges*

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

GLASER-ALLEN, Chief Judge:

A panel of officer members sitting as a special court-martial convicted the appellant, contrary to his pleas, of two specifications of larceny, in violation of Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921

(2012).[1] The convening authority approved the adjudged sentence of reduction to pay grade E-1 and a bad-conduct discharge and, except for the punitive discharge, ordered it executed.

The appellant asserts three assignments of error (AOE):[2] (1) the evidence is legally and factually insufficient; (2) the members' guilty finding by exceptions and substitutions to "one kennel" in Specification 1 rendered the verdict ambiguous regarding that language, and (3) the promulgating order was incorrect regarding Specification 3.

After carefully considering the pleadings and the record of trial, we find no error materially prejudicial to the substantial rights of the appellant and affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ. The government concedes error in the promulgating order raised in the third AOE, and we order corrective action in our decretal paragraph.

## I. BACKGROUND

From 2013 through 2015, the appellant was a military police officer assigned to Marine Corps Air Station (MCAS) Miramar, San Diego, California.

In January 2013, the appellant completed the Lackland Air Force Base working dog handler course and reported to the MCAS Miramar kennels. He later assumed additional duties as the kennels' supply noncommissioned officer (NCO)—responsible for keeping supply records, ordering and issuing gear, and receiving issued gear when handlers checked out of the command.

The appellant's final work week on active duty was 12-16 January 2015, and his end of active service (EAS) was 18 January 2015.[3] From 12-14 January 2015, the appellant was assigned to the United States Secret Service for his last mission as a dog handler. Dog handlers are expected to turn in all of their government-issued gear, prior to their EAS, to the supply NCO.

On 14 January 2015, CR (the appellant's wife) reported to the MCAS Miramar Criminal Investigative Division (CID) that the appellant was stealing government working dog equipment. The appellant had these items at his personal residence, a storage unit, and his in-laws' backyard. CID

---

[1] The appellant was initially charged with three specifications of larceny. At trial, the military judge granted the defense motion to withdraw and dismiss the second specification. At issue here are the two remaining specifications. Specification 1 refers to the theft of military property/working dog equipment, and Specification 3 to Basic Allowance for Housing fraud.

[2] We have reordered the AOEs raised in the appellant's brief.

[3] Because the appellant's EAS was on a Sunday, he would have completed his check-out process and received his discharge paperwork on Friday, 16 January 2015.

recovered over 30 pieces of military working dog gear—all identical to that used by MCAS Miramar kennels personnel—at the three locations. During the larceny investigation, CID also discovered that the appellant had received Basic Allowance for Housing (BAH) at the "with dependents" rate, for periods when he had no wife, children, or other dependents.

## II. DISCUSSION

### A. Factual and legal sufficiency

We review questions of legal and factual sufficiency *de novo*. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is whether, "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006) (citing *Turner*, 25 M.J. at 325 and Art. 66(c), UCMJ), *aff'd on other grounds*, 64 M.J. 348 (C.A.A.F. 2007). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. We may "judge the credibility of witnesses, and determine controverted questions of fact," substituting our judgment for that of the fact finder. Art 66(c), UCMJ; *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990). While this is a high standard, the phrase "beyond a reasonable doubt" does not imply that the evidence must be free from conflict. *Rankin*, 63 M.J. at 557 (citation omitted).

#### 1. *Larceny of working dog handling gear*

In order to convict the appellant of larceny under Specification 1, the government had to prove beyond a reasonable doubt:

> One, that on divers occasions between on or about 25 January 2013 and 30 June 2014, the accused wrongfully took or withheld certain property, that is, 33 listed items of military

working dog equipment from the possession of the United States;

Two, that the property belonged to the United States;

Three, that the property had a value of more than $500.00;

Four, that the taking by the accused was with the intent to permanently deprive the United States of the use and benefit of the property or permanently to appropriate the property to the accused's own use or the use of someone other than the owner; and

Five, that the property was military property.[4]

The members received the following evidence regarding this specification:

1. CID seized 33 items from the appellant's personal residence, storage locker, and in-laws' backyard.

2. A CID agent testified that all of the items were found on 15 January 2015—one business day before the appellant's EAS—and that the appellant's storage locker had been double-locked by the storage facility due to non-payment of storage fees.

3. All seized items were the same brand, shape, color, and size as those used in the MCAS Miramar kennels.

4. Items seized from the appellant's residence included a Kevlar canine vest, a Bushnell rangefinder, a Ray Allen forearm leather wrap, and a dog kennel.

5. CID seized a second kennel from the appellant's in-laws' backyard.

6. The serial number on the seized rangefinder (#600161) matched the serial number on a 2007 inventory sheet from the MCAS Miramar kennels.

7. CR shared an apartment with the appellant and testified that the kennel found in their home was from MCAS Miramar. The appellant claimed he had purchased it from a Petco pet supply store, but he was unable to provide a receipt for the alleged purchase.

8. The appellant's in-laws testified the kennel seized from their backyard was a gift to them from the appellant, given in brand-new, unassembled condition.

---

[4] Record at 391-92; MANUAL FOR COURTS-MARTIAL (2012 ed.), Part IV, ¶46b, Appellate Exhibit (AE) XVI at 1-5. The members excepted out most of the 33 charged items. They convicted the appellant of stealing only four items: a kennel, a First Choice armor and equipment police dog vest, a Bushnell Yardage Pro Range Finder, and a Ray Allen forearm dog training leather wrap. *Id*. at 447-48; AE XV; AE XVII.

9. The appellant testified that he had borrowed the kennel he provided to his in-laws with the MCAS Miramar kennel master's permission. Sergeant (Sgt) O, the MCAS Miramar kennel master, testified that despite the appellant's contentions, he never gave the appellant permission to borrow or take home any items from MCAS Miramar kennels, including the kennel found in the appellant's in-laws' backyard.

10. Gunnery Sergeant (GySgt) P and Sgt V testified that, despite the appellant's contentions about some of the items found in his possession, dog handlers are not issued gear at the Lackland basic dog handler course, and it would be unusual for a handler to be issued a canine vest.

11. The appellant was the supply NCO with regular access to MCAS Miramar working dog handler equipment. Sgt V testified that, at the time of the larcenies, there were no unit procedures for checking out gear.

12. Sgt V testified that when he checked into the MCAS Miramar kennels in 2012 as a handler, he was issued working dog handling gear—but not a canine vest or rangefinder. He also testified that canine Kevlar vests are not personally issued at MCAS Miramar and therefore would not be gear a dog handler would have in their personal residence.

13. The property the appellant was convicted of stealing exceeds $500.00 in value. The canine vest has an estimated value of $800.00, and the rangefinder has an estimated value of $340.00.

14. CR testified that the appellant intended to work as a civilian working dog handler after his EAS. This future endeavor was why he limited CR to certain dog breeds when selecting a puppy ("Sadie") for their family.[5]

15. The appellant admitted that the canine vest, rangefinder, leather wrap, and the kennel at his in-laws' residence were military/government property which he obtained from—and intended to return to—the MCAS Miramar kennels before his EAS. However, he also said he had "completely forgotten" about the kennel he brought to his in-laws' home.[6]

16. The appellant testified that he consented to the search of his residence, vehicle, and storage locker—knowing that CID would find government dog handling items there—because he did not intend to permanently deprive the government of the property. Instead, he claimed he planned to turn in his gear on 15 and 16 January 2015 as the last part of his check-out process from MCAS Miramar:

---

[5] Record at 225, 234-35, 302.

[6] *Id.* at 303.

> Upon arrival of my–getting to work on Thursday morning, I actually told Sergeant [V], "I got to go home and get the rest of my gear so I could check out so I could collect it all together." By that time, approximate–I want to say about 0830, we got a phonecall [sic] saying that we had a meeting over at PMO . . . . About an hour later they told us–one of the agents came in and said that CID would like to talk to me . . . .[7]

We believe the evidence presented is sufficient to establish that the canine vest, rangefinder, leather wrap, and both kennels were MCAS Miramar military working dog property seized by CID. Although the appellant contends that he had some of the gear in his residence due to his recent mission, other experienced dog handlers said he had no reason to store some of it there—particularly the Kevlar canine vest. The appellant also argues that he intended to return all the items before he checked out of MCAS Miramar prior to his EAS, purchased the kennel found in his residence, and had permission to take the kennel found at his in-laws' home. However, these contentions regarding the kennels were directly contradicted by CR and Sgt O. It strains credulity that the appellant—an NCO with six years of service in a law enforcement and working dog specialty—thought it was permissible to bring these government supply items, including a brand-new kennel, home for personal use. Similarly, though the appellant claimed he purchased the kennel found in his residence, he was unable to produce a receipt, and CR claimed the appellant admitted to her that the kennel came from MCAS Miramar. The more plausible explanation is that the appellant intended to soon pursue a civilian working dog career, possibly with his own dog Sadie, and kept the items to assist him in that endeavor.

*2. Larceny of BAH*

In order to convict the appellant of larceny under Specification 3, the government had to prove beyond a reasonable doubt:

> One, that from on or about 20 August 2013 to 23 December 2013, the accused wrongfully obtained or withheld certain property, that is, BAH, from the possession of the United States;

> Two, that the property belonged to the United States;

> Three, that the property had a value of more than $500.00; and

> Four, that the obtaining or withholding by the accused was with the intent to permanently defraud the United States of

---

[7] Record at 322.

the use and benefit of the property or permanently to appropriate the property to the accused's own use or the use of someone other than the owner.[8]

The members received the following evidence regarding this specification:

1. The appellant married three times between 2010 and 2015, and was entitled to BAH "with dependents" while married. He was married to AW from 25 January 2010 to 18 November 2011, and again from 2 March 2012 to 20 August 2013. He married CR on 23 December 2013.

2. Chief Warrant Officer-3 (CWO-3) D, the MCAS Miramar Installation Personnel Administrative Center (IPAC) Deputy Director, testified that the appellant's official records include his dependency applications and BAH certifications. These BAH applications require information about a Marine's family, and include a statement in which a Marine must state whether his family circumstances have or have not changed: "I certify that my eligibility for entitlement of basic allowance for housing has or has not changed since my last certification update."[9]

3. On 25 August 2010, the appellant certified he had two dependents; his wife AW, and his stepson. On 22 March 2012, he updated the dependency application at IPAC to reflect his initial divorce and later remarriage to AW. However, CWO-3 D testified that the appellant did not update his dependency application to reflect his second divorce from AW and subsequent marriage to CR until 1 May 2015—months after being placed on legal hold and learning he was being investigated for theft of military working dog equipment and BAH fraud. As a result of the 1 May 2015 update, his pay was recouped for the four-month period between 20 August 2013 and 23 December 2013 (when he was improperly paid over $7,900.00 at the BAH "with dependents" rate, despite not being married).

4. At trial, the appellant admitted he was unmarried from 20 August 2013 to 23 December 2013, but had continued to collect BAH at the "with dependents" rate.

5. Although stating he attempted to update his records in May 2014, after marrying CR in December 2013, the appellant admitted he signed the dependency certifications in 2012 and 2015, but did not update his BAH in-between those dates despite demonstrated familiarity with the process.

---

[8] *Id.* at 397; MCM, Part IV, ¶46b, AE XVI at 5-7. "Military property" was struck from Specification 3 via pen and ink change to the Charge Sheet on 18 November 2015. Charge Sheet.

[9] *Id.* at 254; Prosecution Exhibit (PE) 45 at 44.

6. Further, the appellant did not contest that the BAH originally belonged to the United States, had some value, and that he obtained it despite having no dependents between 20 August and 23 December 2013.

7. The appellant did not dispute that he improperly received BAH at the "with dependents" rate from 20 August to 23 December 2013, but argued that he was unable to rectify his pay to properly reflect his entitlements.

We find it implausible that despite his purported efforts, the appellant was unsuccessful in attempting to update his marital status in April 2014. More likely is that being familiar with the process, he waited nearly 17 months from his December 2013 marriage, until May 2015, to file a new dependency application. He knew from previous experience that he was not entitled to BAH at the "with dependents" rate while unmarried, and it is more plausible that he simply wanted the increased pay for the four months between his marriages—or did not want to deal with the paperwork—than that this reflected some unresolved error in his pay.

Weighing all the evidence presented at trial, and making allowances for not having personally observed the witnesses, we are persuaded beyond a reasonable doubt that the appellant was properly convicted of committing both larcenies. We are similarly satisfied that the members' findings for both larcenies were legally sufficient.

**B. Ambiguous verdict**

Under Specification 1, the appellant was charged with stealing 33 pieces of working dog gear from the United States on divers occasions between 25 January 2013 and 30 June 2014. At trial, the members were instructed and then presented with a findings worksheet that gave them the option to find the appellant either: (1) not guilty; (2) guilty; (3) guilty of specific items by exceptions or substitutions; or (4) not guilty of larceny, but guilty of wrongful appropriation. Following deliberations, the members found the appellant guilty of stealing four items: a canine vest, a Bushnell rangefinder, a Ray Allen forearm leather wrap, and one kennel.[10]

The appellant argues the members' substitution of "one kennel" and lack of clarification from the military judge regarding whether he was convicted of stealing the kennel found at his residence or the kennel found in his in-laws' home violates double jeopardy principles, renders impossible our ability to determine which kennel the appellant was convicted of stealing, and precludes our ability to conduct a factual sufficiency review regarding that specific language in Specification 1 of the Charge. We disagree.

---

[10] The appellant was found not guilty of the excepted items including the language "two kennels." Record 447-48; AE XV; and AE XVII.

We review *de novo* the question of whether there is any ambiguity in the findings that prevents us from conducting our factual sufficiency review under Article 66(c), UCMJ. *See United States v. Rodriguez*, 66 M.J. 201, 203 (C.A.A.F. 2008) (citing *United States v. Brown*, 65 M.J. 356, 358-59 (C.A.A.F. 2007)).

The appellant anchors his argument in two cases, *United States v. Walters*, 58 M.J. 391 (C.A.A.F. 2003) and *United States v. Saxman*, 69 M.J. 540 (N-M. Ct. Crim. App. 2010). These anchors, however, are misplaced, as these cases are distinguishable from the present case. In *Walters*, when the members excepted certain drug uses from the sole guilty finding, they also, without providing further explanation, excepted the words on "divers occasions," and thus made it impossible for an appellate court to determine what "specific instance of conduct upon which their modified findings [were] based." 58 M.J. at 396. The narrow holding in *Walters* does not apply here because the members did not except the words "on divers occasions." Instead, they only found a lesser number of stolen items. As our superior court noted "[t]he rule from *Walters* . . . applies only in those 'narrow circumstance[s]' involving the conversion of a 'divers occasions' specification to a 'one occasion' specification through exceptions and substitutions by the members." *Rodriguez*, 66 M.J. at 205 (citations omitted).

In *Saxman*, the members used exceptions and substitutions to find the accused guilty of possessing 4 of 22 child pornography video files alleged in a single specification. The specification did not allege possession on divers occasions or otherwise describe where and how the accused possessed the files. Most importantly, the court was unable to conduct a meaningful appellate review, under Article 66, UCMJ, because the court could not determine which images were actual child pornography, and which were not, since it had no insight into which images the members had acquitted the appellant of. 69 M.J. at 545.[11]

Furthermore, the members did not acquit the appellant of the specification entirely, but excepted "two kennels" and substituted "one kennel" among other items. They reached a general verdict, based on

---

[11] The court disagrees with the appellant's assertion that *Saxman* holds "a finding is ambiguous not only when the Court cannot discern which *occasion* was the incident that formed the basis of a guilty finding but also which *item* formed the basis of a guilty finding." Appellant's Reply Brief of 31 Oct 2016 at 2 (citation omitted). While *Saxman* may appear on its face to extend *Walters* to cases not involving "divers occasions" language, we find *Saxman* limited to the particular facts of that case involving what images at trial constituted child pornography. We can locate no other military case that extends *Walters* beyond those involving "divers occasions."

multiple acts, resulting in a theft of four pieces of working dog equipment, thus making *Saxman* inapplicable. It is well-settled that, "[w]hen members find an accused guilty of an 'on divers occasions' specification, they need only determine that the accused committed two acts that satisfied the elements of the crime as charged—without specifying the acts, or how many acts, upon which the conviction was based." *Rodriguez*, 66 M.J. at 203 (citations omitted). Likewise, "[t]he longstanding common law rule is that when the factfinder returns a guilty verdict on an indictment charging several acts, the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Id.* at 204 (citing *Griffin v. United States*, 502 U.S. 46, 49 (1991)); *see also United States v. Jones*, 66 M.J. 704, 708 (A.F. Ct. Crim. App. 2008) (holding when a conviction for misusing a Government Travel Card on divers occasions is supported by evidence of at least two acts of misuse, it will not render a verdict ambiguous). So too here.

That the members excepted "two kennels" while substituting "one kennel" is of little concern given the facts of this case and the nature of a general verdict, because the members still convicted the appellant of stealing multiple items on divers occasions (between 25 January 2013 and 30 June 2014) in the specification. An acquittal of an offense is not a general repudiation of all the underlying facts related to that offense. Because we find there was enough evidence to sustain convictions to either kennel, we are unconvinced this case requires "greater specificity in the findings . . . to determine which act survives the verdict for appellate review."[12] Thus, we are satisfied that jeopardy attached for the entire charged time period and the exception and substitution from "two kennels" to "one kennel" does not render the verdict ambiguous.

## C. Incorrect court-martial order

As the appellant notes, and the government concedes, the court-martial order (CMO) fails to state that the language "20 February 2013 to 20 August 2013" in Specification 3 of the Charge was dismissed by the military judge pursuant to RULE FOR COURTS-MARTIAL 917, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).[13] This change narrowed the specification's dates to "20 August 2013 to on or about 23 December 2013."[14] The appellant does not assert, and we do not find, any prejudice resulting from this error. Nevertheless, the appellant is entitled to have the CMO accurately reflect the

---

[12] *United States v. Fields*, No. 201100455, 2012 CCA LEXIS 129, at *13, unpublished op. (N-M. Ct. Crim. App. 12 Apr. 2012) (citing *Rodriguez*, 66 M.J. at 205).

[13] Record at 389.

[14] *Id.*

results of the proceedings. *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998). We thus order corrective action in our decretal paragraph.

### III. CONCLUSION

The findings and sentence are affirmed. The supplemental CMO shall correctly reflect that the phrase "20 February 2013 to 20 August 2013" was dismissed from Specification 3 of the Charge, narrowing the specification dates to "20 August 2013 to on or about 23 December 2013."

Judge JONES concurs.

MARKS, Senior Judge (concurring in part and dissenting in part):

I believe the findings in this case are ambiguous; therefore, I would set aside the appellant's conviction for larceny of "one kennel." I would affirm the remaining convictions and the sentence.

I respectfully disagree that the holding in *United States v. Walters*, 58 M.J. 391 (C.A.A.F. 2003) does not apply to this case because the members did not except "on divers occasions" from the specification at issue. The government presented evidence that the appellant stole two kennels on divers occasions. With an exception and substitution, the members acquitted the appellant of stealing two kennels—on divers occasions according to the evidence—and convicted him of stealing one kennel—necessarily on one occasion. The government, by imbedding a detailed inventory of property in a single specification, prompted the members to render too transparent and detailed a verdict for the general verdict theory.

This court, charged with reviewing the factual and legal sufficiency of, *inter alia*, a conviction for larceny of one of two kennels, must first know which kennel the appellant was convicted of stealing and which kennel he was acquitted of stealing.

> The Court of Criminal Appeals is required to weigh the evidence and be themselves convinced beyond a reasonable doubt of Appellant's guilt of engaging in wrongful use on the same 'one occasion' that served as the basis for the members' guilty finding. Without knowing which incident that Appellant had been found guilty of and which incidents he was found not guilty of, that task is impossible.

*Walters*, 58 M.J. 391, 396 (C.A.A.F. 2003); *see also United States v. Fields*, No. 201100455, 2012 CCA LEXIS 129, at *13, unpublished op. (N-M. Ct. Crim. App. 12 Apr. 2012) (noting that "a *Walters*-type solution is necessary" where "the modified findings 'implicitly mean that the factfinder had found that the

accused was not guilty of some of the acts alleged at trial' and therefore greater specificity in the findings is necessary to determine which act survives the verdict for appellate review") (quoting *United States v. Rodriguez*, 66 M.J. 201, 205 (C.A.A.F. 2008)). The distinction between "occasion" or "incident" in *Walters* and "kennel" in this case is semantics. To fulfill our obligations under Article 66, Uniform Code of Military Justice, while ensuring the appellant's constitutional protection against double jeopardy, I would set aside the appellant's ambiguous conviction for larceny of one kennel.

Applying the sentence reassessment factors in *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013), and finding no changes in penalty exposure, gravamen of criminal conduct, or admissible aggravating circumstances, I would not reassess the sentence but affirm it as adjudged.

For the Court



R.H. TROIDL
Clerk of Court