# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class RYAN E. MANNAN**
**United States Army, Appellant**

ARMY 20170096

Headquarters, 82d Airborne Division
Deidra J. Fleming and Daniel G. Brookhart, Military Judges
Colonel Dean L. Whitford, Staff Judge Advocate

For Appellant:  Captain Benjamin A. Accinelli, JA; William E. Cassara, Esquire (on brief and brief on specified issue).

For Appellee:  Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Lieutenant Colonel Wayne H. Williams, JA; Captain KJ Harris, JA (on brief and brief on specified issue).

11 April 2019

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FEBBO, Judge:

Appellant argues his convictions of sexual assault under two different theories of liability are legally and factually insufficient.  We find otherwise.[1]  Further, we considered whether the military judge applied the wrong *mens rea* to two of the specifications of which appellant was convicted.  As appellant forfeited any issue

---

[1] We have also considered appellant's claim of dilatory post-trial processing under *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006).  We find appellant has suffered no actual prejudice due to delay in the post-trial processing of his case.  We further find no other relief for the delay is warranted under Article 66, UCMJ.

relating to *mens rea* at trial, we conclude appellant has not carried the burden of demonstrating plain error in his case.

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of four specifications of sexual assault, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. §§ 920 (2012) [UCMJ]. Contingent upon completion of appellate review, the military judge conditionally dismissed Specifications 2 and 4 of The Charge, which alleged bodily harm, because they were charged in the alternative to Specifications 1 and 3 of The Charge, which alleged incapacity to consent.[2] The military judge sentenced appellant to a dishonorable discharge, thirteen months of confinement, reduction to the grade of E-1, and forfeiture of all pay and allowances. The convening authority approved the adjudged sentence. This case is before us for review pursuant to Article 66, UCMJ.

We find appellant's convictions are legally and factually sufficient. We further conclude appellant has not shown the military judge committed plain error with respect to the *mens rea* applicable to the specifications alleging appellant committed sexual assault by bodily harm.[3]

## BACKGROUND

Appellant was assigned to Fort Bragg, North Carolina. In April 2015, Gunner's Mate Third Class (GM3) Mylee Novak hosted a small party at her apartment in Fort Lauderdale, Florida. Her cousin, Specialist (SPC) Tyler Novak invited three other Fort Bragg soldiers on a road trip to the party: SPC Hernandez, SPC Pollard, and appellant. After a day on the beach, the group picked up dinner, rum, and beer before returning to GM3 Novak's apartment around 2000. Gunner's Mate Third Class Novak's mother was also visiting on the night of the party.

Around 2100, Seaman's Apprentice RB, a coworker of GM3 Novak, joined the party. RB drank some beer and ate some food. After eating dinner, RB drank two or three shots of an unknown clear alcohol with GM3 Novak, after which she began

---

[2] At trial, the government dismissed the original specification 1 of the Charge and renumbered the remaining four specifications.

[3] We specified this issue for briefing in light of *United States v. Peebles*, 78 M.J. 658 (Army Ct. Crim. App. 2019). In our order specifying the issue, we erred by referring to the relevant specifications as Specifications 3 and 5. Due to dismissal of the original Specification 1, the relevant specifications were renumbered Specifications 2 and 4. Fortunately, both parties correctly ascertained our intent and briefed the issue on the relevant specifications.

drinking "Kraken" brand rum directly from the bottle. RB testified she drank "a good amount" of the bottle. After dinner, the group moved downstairs to a billiard area in the apartment complex. Gunner's Mate Third Class Novak's mother stayed in the apartment. At that point in the evening, GM3 Novak described RB as "pretty intoxicated," and capable of walking, but unstable. RB continued to drink alcohol. While playing billiards, the group bet each other that the loser would get thrown in the pool outside the billiards area. Specialist Pollard and RB went into the pool. RB exited the pool and pulled appellant into the pool.

While SPC Pollard and appellant were in the pool together, they cradled RB in their arms. Without any discussion or consent, appellant inserted his finger into RB's vagina. At the time, appellant and RB had hardly spoken and did not even know each other's names. Specialist Pollard heard RB moaning and telling appellant to "stop." SPC Pollard told appellant to stop because RB was "really drunk." RB, however, did not remember telling appellant to stop.

Afterward, appellant and RB exited the pool. RB got onto appellant's back and appellant carried her up the exterior cement staircase to GM3 Novak's apartment. Appellant stopped on a landing. RB remembered lying on the concrete landing with appellant on top of her, putting his penis inside her vagina. Her shorts were off her body and lying next to her. RB told appellant to put her shorts back on, but he continued putting his penis inside her vagina. RB said "ouch," "screamed a little" that it hurt, and cried.

Appellant stopped penetrating RB's vagina. RB tried to stand up, but she fell into a wall. Appellant put RB on his back again and carried her to GM3 Novak's apartment. The next thing RB remembered was lying in GM3 Novak's apartment and throwing up in the bathroom. RB was crying and told GM3 Novak that appellant "put himself inside me in the stairwell."

GM3 Novak drove RB home to her apartment. RB called a friend and reported that she was sexually assaulted. The next day, RB underwent a sexual assault medical forensic examination.

Appellant drove back to Fort Bragg with his three friends. Appellant told one of his friends that he placed his penis in RB's vagina, but stopped when she showed signs she was in pain.

## LAW AND DISCUSSION

Article 66, UCMJ, establishes our statutory duty to review a record of trial for legal and factual sufficiency de novo. *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003). We may affirm only those findings of guilty that we find correct in law and fact and determine, based on the entire record, should be affirmed. *Id.*

In evaluating factual sufficiency, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). To affirm a conviction, "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we must be] convinced of [appellant's] guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

Based on appellant's admission to other soldiers, there is no reasonable dispute that appellant committed the alleged sexual acts. The only issues are whether RB was so impaired that she could not consent to the sexual acts, whether RB in fact did not consent to the sexual acts, and whether appellant had a sufficient *mens rea* as to RB's inability to consent and the fact RB did not consent. We answer these issues in the affirmative. First, we will discuss RB's incapacity to consent and the fact she did not consent. Second, we will discuss appellant's *mens rea* as to RB's ability to consent and the fact she did not consent.

### A. Incapacity to Consent and Lack of Consent

It is beyond reasonable dispute that RB was impaired by alcohol when appellant performed sexual acts on her. Mere impairment, however, does not end the analysis. Article 120(b)(3) "does not proscribe sexual acts with impaired people, but rather with people incapable of consenting to the conduct at issue because of their impairment—and even then, only when the inability to consent is known, or reasonably should be known, to an accused." *United States v. Solis*, 75 M.J. 759, 763 (N-M. Ct. Crim. App. 2016). An individual is incapable of consenting to sexual conduct when that individual lacks "the cognitive ability to appreciate the nature of the conduct in question, [or] the mental and physical ability to make and to communicate a decision regarding that conduct to the other person *United States v. Pease*, 74 M.J. 763, 770 (N.M. Ct. Crim. App. 2015), aff'd 75 M.J. 180 (C.A.A.F. 2016). *See also United States v. Bailey*, 77 M.J. 11, 13 (C.A.A.F. 2017).

Appellant asserts the evidence was factually insufficient to support his convictions for sexual assault. Appellant points to RB's actions prior to the assaults to show she was not impaired to the point she was incapable of consenting. This includes, among other actions, RB playing billiards earlier in the evening, and finding a toilet to vomit into later in the evening. Other evidence, however, persuades us that RB was indeed incapable of consent at the times appellant committed sexual acts upon her.

There seems to be little dispute that RB was highly intoxicated most of the evening in question. RB's own testimony and the testimony of other witnesses establish RB was intoxicated. We have no doubt that she nevertheless had the cognitive ability to appreciate her surroundings and actions much of the time. This

4

does not answer the core question, however, of whether RB had the cognitive ability to appreciate the nature of appellant's sexual acts and the ability to communicate consent—or lack thereof—at the critical moments when appellant performed sexual acts upon her. Former capacity does not guarantee capacity in the future, and later capacity is not necessarily indicative of capacity in the past. In other words, capacity to consent is not so much an event horizon—from whose bourn no traveler returns—as a threshold, which may be crossed in both directions.

Although RB did not remember telling appellant to stop inserting his finger in her vagina, SPC Pollard heard her telling appellant to stop. At a minimum, this reinforces the fact RB did not consent, and also suggests that RB was not fully aware of what was happening at the time because she later reported being unaware of her own words. Further, SPC Pollard told appellant not to penetrate RB's vagina with appellant's finger because she was "really drunk." Specialist Pollard clearly recognized RB was incapable of consenting to or resisting appellant's actions.

RB's recollection of appellant's sexual acts on her in the stairwell are also consistent with her inability to consent. RB reported being aware she was being carried by appellant, but she was not aware of the location to which she was being carried. She next remembered being laid on the cement landing, but did not remember how her shorts were removed. She testified she was "confused," and came to realize appellant was sexually penetrating her.

Although RB may have had moments in which she was capable of protest—and in which she indeed protested appellant's actions—we conclude she was incapable of appreciating the nature of appellant's acts upon her or of consenting to those actions, at least when appellant first penetrated her vagina with his finger, and when he first penetrated her vagina with his penis. Even if RB became aware of appellant's actions or regained the capacity to protest moments later, we find she was incapable of consent as appellant penetrated her. We further find appellant knew, or reasonably should have known, RB was incapable of consenting to appellant's sexual acts.

We also find that RB in fact never consented to any sexual acts with appellant. The record is simply devoid of credible evidence that RB consented.

The military judge was presented two theories of liability—first that RB was incapable of consent, and second that RB did not consent, and therefore the sexual acts constituted bodily harm. The military judge convicted appellant under both theories. After reviewing the evidence ourselves, we agree with the military judge that the elements of all four specifications were met.

5

*B. Appellant's Mens Rea as to Consent*

Consent is more than an absence of protest; it is an affirmative concept. Consent may be explicit or implicit, and it may be verbal or nonverbal. Appellant's basic approach with RB, however, turned the notion of affirmative consent on its head. Appellant's course of conduct was to bypass consent and perform sexual acts on RB until she manifested her lack of consent. Appellant's actions were, at a minimum, reckless as to the fact RB never consented to sexual acts.

Appellant did not know RB's name. He did not ask for her consent to any sexual acts. She did not indicate she wanted any sexual acts performed on her. Specialist Pollard recognized that RB was "really drunk" and it was wrong to perform any sexual acts on her. Nevertheless, appellant inserted his finger in RB's vagina while in a public place, and while RB was vulnerable, both due to her level of intoxication, and due to her physical position—being held by two men in a pool. Appellant's actions in this regard were, at a minimum, reckless.[4]

Appellant's sexual acts upon RB in the stairwell display a similar reckless disregard for the fact she never consented. In fact, SPC Pollard told appellant RB was "really drunk" and appellant should not perform any sexual acts on her shortly before appellant penetrated RB's vagina with his penis in the stairwell. Moreover, SPC Pollard heard RB say "stop" when appellant penetrated her vagina with his finger in the pool. Nevertheless, absent any credible evidence RB consented in any way, appellant removed RB's clothes in a public stairwell and penetrated her vagina with his penis. Appellant was, at a minimum, reckless.

We also conclude that appellant has not demonstrated that the military judge applied the wrong *mens rea* in appellant's case. Further, even assuming, arguendo, that the military judge applied the wrong *mens rea* in light of our decision in *Peebles*, we conclude appellant has not demonstrated that any such error materially prejudiced his substantial rights. *See generally Peebles*, 78 M.J. at 667.

The model panel instruction on mistake of fact as to consent in the Military Judges' Benchbook undergirds appellant's best argument that the military judge

---

[4] We also find a reasonable person would have realized that RB was too intoxicated to consent to the sexual acts. The reasonable person standard is, however, synonymous with negligence. For the reasons set forth in *Peebles*, however, our analysis of appellant's *mens rea* as to the fact that RB never consented to any sexual acts centers on the *mens rea* of recklessness. We find appellant's actions, at the very least, display a reckless disregard for whether RB consented to any sexual acts. *See Peebles*, 78 M.J. at 664-67.

applied the wrong *mens rea* to the element of non-consent in the specifications alleging sexual assault by bodily harm. *See* Dep't of the Army, Pam. 27-9, Legal Services: Military Judges' Benchbook [Benchbook], para. 3-45-14 (10 Sep. 2014). *See also*, *Peebles*, 78 M.J. at 662-67. This case, however, was a bench trial and therefore there were no instructions to a panel.

"The Benchbook is not a source of law, but represents a snapshot of the prevailing understanding of the law, among the trial judiciary, as it relates to trial procedure." *United States v. Cornelison*, 78 M.J. 739, 745 (Army Ct. Crim. App. 2019) (citing *United States v. Riley*, 72 M.J. 115, 122 (C.A.A.F. 2013)). "Military judges are presumed to know the law and to follow it absent clear evidence to the contrary." *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citing *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997)).

Unlike the Benchbook, on-point precedential opinions of the Supreme Court, the Court of Appeals for the Armed Forces (CAAF), and this court, are the law binding on courts-martial. Our opinion in *Peebles*, was a direct application of the principles previously set forth in *Elonis v. United States*, 135 S. Ct. 2001 (2015), and *United States v. Gifford*, 75 M.J. 140 (C.A.A.F. 2016). *See Peebles*, 78 M.J. at 664-67. The merits portion of appellant's court-martial took place well after both *Elonis* and *Gifford* were decided. Thus, we presume the military judge knew and correctly applied the law set forth in those opinions and did not apply a *mens rea* of negligence to the specifications alleging sexual assault by bodily harm. We conclude the mere existence of an instruction in the Benchbook that could be applied in conflict with *Elonis* and *Gifford*, without further support in the record, does not overcome the presumption the military judge knew and applied the law correctly in this case.

Moreover, even if appellant were to overcome the presumption that the military judge knew and applied the law, we conclude he is not entitled to relief under the plain error standard of review. To show a material prejudice to his substantial rights, appellant must show "there is a 'reasonable probability' that the [court-martial] would have found that appellant acted less than recklessly." *Id.* at 667. Appellant simply has not met this burden. Appellant's actions toward RB were, as discussed above, quintessentially reckless as to whether RB consented to any sexual acts with appellant.

## CONCLUSION

We are mindful that the trial court saw and heard the witnesses and we have not. *See Washington*, 57 M.J. at 399. Considering the totality of the evidence, we find appellant's convictions legally and factually sufficient. *See id.* Further, we find that appellant has failed to show he is entitled to relief for any alleged error of

MANNAN—ARMY 20170096

the military judge as to the *mens rea* applicable to Specifications 2 and 4 of The Charge.

Upon consideration of the entire record, the findings of guilty and sentence are AFFIRMED. Specifications 2 and 4 of The Charge will be DISMISSED upon Specifications 1 and 3 of The Charge surviving "final judgment" of the proceedings. *See* UCMJ, art. 71(c)(1) (defining "final judgment").

Senior Judge MULLIGAN and Judge SCHASBERGER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court